W. D. Wood v. Wagner Electric Corporation et al., Appellants.— No. 39927.—197 S. W. (2d) 647.

Court en Banc, November 11, 1946.

*Albert I. Graff* and *Malcolm I. Frank* for appellants.

672

J. Harry Pohlman* and *William Kohn* for respondent.

 HYDE, J.—This is a Workmen's Compensation case. The Commission found that claimant sustained an accident arising out of and in the course of his employment causing a left inguinal hernia, and made a temporary or partial award requiring the employer to furnish surgical treatment to cure this injury. Claimant refused the operation tendered; and the Commission then made a final award finding his refusal unreasonable and denying all compensation. Claimant appealed to the circuit court which reversed the award and defendants appealed from this judgment of reversal.

Defendants' appeal went to the St. Louis Court of Appeals which affirmed the judgment of the circuit court and ordered the cause remanded to the Commission. [Wood v. Wagner Electric Corporation, 192 S. W. (2d) 579.] Reference is made to that opinion for a full statement of the facts. Upon defendants' application, under Section 10, Article V, 1945 Constitution, we ordered the cause transferred here.

 The circuit court reversed this award (denying any compensation) on the grounds that the Commission acted in excess of its powers; that the facts found by the Commission do not support the award; and that there was not sufficient competent evidence in the record to warrant the making of the award. The question is raised as to the scope of review under Section 22, Article V, 1945 Constitution. We cannot agree with the conclusion of the court of appeals that "Section 3732 has not been affected by the new Constitution." (This and all other references are to R. S. 1939 and Mo. Stat. Ann.) It is true that it had not been affected on the date of the court of appeals opinion because of the provision of Section 2 of the Schedule that "all laws inconsistent with this Constitution, unless sooner

674

repealed or amended to conform to this Constitution, shall remain in full force and effect until July 1, 1946.'' However, as of July 1, 1946, there has been written into Section 3732, in lieu of the narrow review ground No. 4 ''that there was not sufficient competent evidence in the record to warrant the making of the award,'' the broader ground that the award (and any finding supporting it) was not ''supported by competent and substantial evidence upon the whole record.'' This is true because the Constitution makes this broader review the minimum standard which may be established for review in any case decided on a hearing before an administrative officer or body. This is the same review provision as that now stated in our new Administrative Review Act, S. C. S. S. B. 196, Mo. Stat. Ann. 1140.110(f), also effective July 1, 1946. (See also the new Federal ''Administrative Procedure Act.'' Public Law No. 404, 79th Congress, known as the McCarran-Sumners Act; U. S. C. A. Title 5, Chapter 19, Section 1009(e).)

■ The provision in Section 22 that administrative decisions ''shall be subject to direct review by the courts as provided by law'' refers to the *method* of review to be provided (certiorari, appeal, etc.) and not to the *scope* of the review ''in cases in which a hearing is required by law.'' For the latter, this stated minimum standard (''supported by competent and substantial evidence upon the whole record'') is mandatory and requires no legislation to put it into effect. This does not mean that the reviewing court may substitute its own judgment on the evidence for that of the administrative tribunal. But it does authorize it to decide whether such tribunal could have reasonably made its findings, and reached its result, upon consideration of all of the evidence before it; and to set aside decisions clearly contrary to the overwhelming weight of the evidence. Of course, the reviewing court should adhere to the rule of deference to findings, involving credibility of witnesses, made by those before whom the witnesses gave oral testimony. Since this is a procedural matter, it applies to all cases falling within its terms whether commenced before or after its effective date. [State ex rel. Northwestern Mutual Life Ins. Co. v. Bland, 354 Mo. 391, 189 S. W. (2d) 542.] It applies to our review of this case because Section 10, Article V, 1945 Constitution, authorizes us to ''finally determine'' a case transferred from a court of appeals ''the same as on original appeal.''

■ Claimant contends that he is entitled to an award for permanent partial disability under Section 3705. The evidence, as summarized in the opinion of the court of appeals (192 S. W. (2d), l. c. 581-582), fully supports the finding of the Commission that claimant sustained an accident resulting in a hernia. However, the requirements for an award of permanent partial disability for such injury are stated in

Section 3705(b), as follows: "First, that there was an accident resulting in hernia; second, that the hernia appeared suddenly, accompanied by intense pain; third, that the hernia immediately followed the accident; fourth, that the hernia did not exist in any degree prior to the accident resulting in the injury for which compensation is claimed."

It was shown that claimant sustained this accident, on the afternoon of Friday, January 28, 1944, by slipping on some broken cardboard boxes while lifting a trash barrel. Claimant worked the rest of the day of his injury and the next day, Saturday. He did not tell his boss about it until Monday and was then sent to a doctor. He did feel a sharp keen pain (also described as "terrible" and "just like you would tear your flesh") and, ten or fifteen minutes later, felt a lump in the place where he had the sharp pain. This seems sufficient to fulfill the first three requirements of the statute. As to the fourth, defendants argue that if claimant "had the hernia of the size he stated (about the size of a hen's egg) within ten minutes after the accident, then he must necessarily have had a pre-existing hernia."

This argument is based on the testimony of claimants own physician, Dr. Todd, which it is contended shows that the hernia must have existed in some degree before the accident. He testified: "Q. Doctor, is it not a fact that if a man has any hernia at all, and has such an increase in intra abdominal pressure, such as this employee testified to and in about ten minutes discovered he had a lump, that he felt the lump about the size of a hen's egg, would there not have to be severe hemorrhage and tearing of the omentum which comes down that far, of such a size? A. A hernia to be fully developed, the man would be sick, it would be physically impossible for that hernia to come down in ten minutes, of that size, no sir. . . . Q. Assume, Doctor, he had no visible hernia before that strain which he testified to, resulting from a slipping and lifting of that barrel, and just as he slipped, he felt a sharp pain; would you say that that lifting caused that pain and later the discovery by him of the protrusion? A. Yes, that is the last stage. . . . Q. But the history as he gave it, is it or is it not your opinion, this slipping and straining could and did, cause that particular hernia? A. Caused the later stage. . . . Q. I believe you previously testified if this man had no hernia whatsoever and performed an act as he stated he performed it, that it would be physically impossible for him to have a hernia such as he described, about ten minutes later about the size of a hen's egg, without having inconvenience or without lapse of consciousness. A. That is right."

Dr. Todd also testified: "Hernia is a protrusion of the intestines or omentum beyond the external ring. . . . Inguinal hernias, ninety-

nine out of a hundred, are due to intra abdominal pressure either suddenly or by degrees. . . . As to the etiology of hernia, it is gradual, continuous series of increase in intra abdominal pressure along this canal ring causing it to come down a little more and a little more, and the patient would not know that until something happened but it is already developing."

Defendants' surgeon, Dr. Nicks confirmed this, saying: "A hernia can either exist for months or years, without any notice being taken by the patient, but a sudden strain or lifting, will attract his attention to it. . . . Q. Doctor, Mr. Kohn asked you if there was an enlarged ring there could this hernia come down from the type injury he described and within ten minutes later, get a lump the size of a hen's egg. A. Not in normal tissue, no." He said this was: "Because the (normal) tissues are so strong and so gross fibred there it is almost impossible to produce sudden rupture. It might be possible with severe external injury but not from pressure from within. I don't see how it could possibly occur." Dr. Nicks also said that when he examined claimant on January 31, 1944 he "found a left indirect inguinal hernia with large fluctuating right ring, apparently long standing." Dr. Todd confirmed this finding.

It was shown that claimant had done heavy farm work all of his life, which was described in detail and shown to be much heavier work than the janitor work he did for defendant. He began to work for Wagner Electric in 1942, and went back to his farm on a leave of absence in the fall of 1943. He did farm work then (mainly harvesting his crop) until shortly before his injury. He said that his feet and legs had played out on him before he went to work for defendant; and that was partly the cause of his renting his farm and coming to St. Louis to work. He also said that "he never had any trouble like this before." He was furnished a truss after the accident and was able to continue his same work for his employer until March 1944, except that he did not do heavy lifting, and received the same pay. He left only because he could not rent his farm for 1944.

The testimony of claimant's own doctor brings this case within the facts of Drecksmith v. Universal Carloading & Distributing Co. (Mo. App.), 18 S. W. (2d) 87 and Lawrence v. Stark Brothers Nurseries & Orchards Co. (Mo. App.), 18 S. W. (2d) 89 because it shows that claimant must have had a hernia in some degree prior to the accident. It shows that prior thereto the inguinal rings must have been weakened and relaxed and there must have been at least a partially developed hernia into the inguinal canal. [See also Kinder v. Hannibal Car Wheel & Foundry Co. (Mo. App.), 18 S. W. (2d) 91; Guillod v. Kansas City Power & Light Co. (Mo. App.), 18 S. W. (2d) 97; Attorney's Text Book of Medicine—Gray, 2d Ed., 780-781.]

Therefore, under the rule established in Von Cloedt v. Yellow Taxicab Co. (Mo. App.), 18 S. W. (2d) 85 and followed in the Drecksmith and Lawrence cases, supra, claimant is not entitled to an award under Section 3705 but would be entitled to an award under either Section 3703 or 3704 for aggravation of this pre-existing condition. On the evidence in this record, his award could only be for temporary partial disability under Section 3704, because he was able to continue his work with defendant, until he left after he was unable to rent his farm, and was likewise able to do some farm work.

We think that the Commission did act in excess of its powers in denying claimant any compensation, after finding that he was injured in an accident arising out of and in the course of his employment. He was not awarded anything at all until the Commission ordered the operation on September 29, 1944 (the referee having found that he was not entitled to any award) and the evidence shows that even with the truss he was unable to do the same farm work during that period that he did before his injury. Our Compensation Act allows compensation for "injuries" independent of the question of disability in the sense of causing loss of earning power. [Betz v. Columbia Telephone Co., 224 Mo. App. 1004, 24 S. W. (2d) 224.] Clearly claimant was entitled to an award of some compensation.

The Commission apparently acted under Section 3701(d) which provides: "No compensation shall be payable for the death or disability of an employee, if and in so far as the same may be caused, continued or aggravated by an unreasonable refusal to submit to any medical or surgical treatment or operation, the risk of which is, in the opinion of the commission, inconsiderable in view of the seriousness of the injury." This did not authorize the forfeiture of all compensation in this case. Certainly claimant's disability was not caused by a refusal to submit to an operation. Nor could it have been continued thereby prior to the time when an operation was offered to him. Moreover, his employer was taking the position that there was no accident and he was entitled to nothing. It persuaded the referee to so find. Under these circumstances, he was entitled to a hearing before the full Commission on the issues of his right to compensation and the necessity of an operation. Since the Commission found that claimant sustained an accident from which an injury resulted, we hold that it should have made an award of temporary partial disability.

Was claimant's refusal to submit to an operation unreasonable, so as to terminate his right to compensation after the date on which it was tendered? This is a question of fact. [Cuchi v. George C. Prendergast & Sons (Mo. App.), 72 S. W. (2d) 136; see also cases cited in Annotations 73 A. L. R. 1318 and 105 A. L. R. 1481.] The court

of appeals held that there was no substantial evidence in the record to support such a finding. Claimant's physician, Dr. Todd, said he would recommend an operation because "surgery is the only means of curing his type of rupture at his age," but "would not say it is safe." He also said that, while claimant's heart was normal for his age (60 years), his blood pressure was high. (180/110.) He further stated that "there ▉▉▉▉ is a hazard in all major surgery and the hazard is increased with age and high blood pressure;" that claimant was "heavy built, rather obese" which "adds to the hazard some;" and that before he would operate on claimant, as a private patient, he would "apprize him of the fact there was extreme hazard because of the high blood pressure and his age." Thus, although Dr. Todd would recommend the operation and thought it could cure claimant, certainly his testimony does show sufficient risk involved to support a finding that a refusal was reasonable.

Defendants' surgeon, Dr. Nicks, recommended an operation and thought claimant was a good operative risk. However, he did not examine his heart or blood pressure, when he saw him in January and February, 1944. Defendants' surgeon, Dr. Gallagher, who examined claimant in May, 1944, found his blood pressure 180/98 and his heart, lungs and abdomen negative. He thought he was a good operative risk and said "the older you get the more danger there is but there is no special danger in this case." He said that the incision should heal in five or six days; that the patient should get out of bed about the tenth day; and that he should be able to do hard work in about eight weeks. However, he also said that "there is more increase of mortality as a person gets older." Claimant's reason for refusal was that he did not feel strong; that because of his age he was afraid he might die from the operation; and that he felt he could "get by" with the truss. Dr. Gallagher said that his fear of an operation would have no bearing upon its success.

While the court of appeals perhaps went too far in holding that there was no substantial evidence of an unreasonable refusal, it does not seem to us that any of this evidence made a very strong showing that claimant's refusal was unreasonable. Furthermore, this is not a case where the Commission had before it conflicting oral evidence on this issue, so that its determination involved the weight and credibility of witnesses who appeared before it. These medical witnesses did not appear before the Commission but only before the referee; and he made no determination of this issue at all because he only decided that there was no accident. Therefore, we have the same opportunity to decide the effect of this evidence as the Commission had, since it only had before it the same written transcript that is before us. This evidence considered as a whole does not seem to

us to show a reasonable basis for holding that it was unreasonable for claimant to refuse to submit to an operation. It is not very encouraging to merely be told that one is a good operative risk. Death has resulted from hernia operations. [See Baker v. Silaz (Ark.), 172 S. W. (2d) 419.] Dr. Todd thought there was "extreme risk" because of claimant's age, weight and blood pressure. Dr. Nicks advised it without even examining his heart or finding his blood pressure. Dr. Gallagher admitted that there was increased mortality from such operations at claimant's age. Thus all of the evidence indicates a greater than average risk because of claimant's age and condition. We find the following statement in Maloy's Legal Anatomy and Surgery 590: "Rarely is an operation for hernia done under the age of two or three years or over the age of sixty or sixty-five unless strangulation be present." [See also Annotations 6 A. L. R. 1260, 18 A. L. R. 431, 73 A. L. R. 1303, 105 A. L. R. 1470; and cases on effect of difference of opinion of one expert as to result 73 A. L. R. 1309, 105 A. L. R. 1477.] We, therefore, hold that the finding of the Commission, that claimant's refusal was unreasonable, is not supported by substantial evidence on the whole record.

The opinion of the St. Louis Court of Appeals, in so far as it conflicts with this opinion, is quashed. The judgment of the Circuit Court setting aside the award of the Workmen's Compensation Commission is affirmed and the cause remanded to that court to be remanded to the Workmen's Compensation Commission for further proceedings not inconsistent with this opinion. All concur.