Robert SZEPANSKI, Employee, Appellant,

v.

STEPHEN GORMAN BRICKLAYING COMPANY, Employer, and Consolidated Underwriters, Insurer, Respondents.

No. 29052.

St. Louis Court of Appeals.

Missouri.

May 17, 1955.

192

David E. Horn, St. Louis, for appellant.

Luke, Cunliff & Wilson, St. Louis, for respondents.

MATTHES, Judge.

This is a proceeding under the Workmen's Compensation Law, Section 287.010 et. seq., RSMo 1949, V.A.M.S., and is an appeal by the employee from the judgment of the Circuit Court of St. Louis County affirming an award of the Industrial Commission.

The referee found that the employee had sustained injury to the "right foot and back", and based upon his findings entered an award that the employee's permanent partial injury was 30% of the man as a whole, and allowed compensation for 120 weeks, at $25 per week, or a total sum of $3,000. On review the Industrial Commission found that the employee had sustained 50% permanent partial disability of the right foot at the ankle and allowed compensation for 77.5 weeks at $25 per week, the sum thereof being $1,937.50, and further found that the employee did not sustain an injury to his back or other parts of his body as a result of the accident.

It was admitted at the hearing that appellant was an employee of Stephen Gorman Bricklaying Company on June 21, 1950, being the day he was injured, that there was an accident, and that he received injuries to his right foot and ankle. The principal dispute in the proceeding before the Industrial Commission involved the alleged back injury. Appellant contended that he sustained a permanent partial injury thereto as a result of the accident. This was denied by respondents. Inasmuch as no complaint is advanced in this court concerning the rating by the Commission of the foot and ankle injury, we shall refrain from referring to testimony relating thereto.

Appellant, 58 years of age at the time of the accident, was a tuck pointer by trade. On June 21, 1950, he was engaged in cleaning a building which required the use of a ladder. While ascending the ladder, with a trowel in his hip pocket, and carrying a five-gallon bucket of acid water, a rung near the top of the ladder broke, precipitating appellant to a concrete roof covering a garage building. There was some discrepancy in the testimony as to the distance appellant fell. At the hearing he testified it was 20 feet, whereas the hospital record showed in the admission note that claimant stated he fell 10 feet. Suffice it to say he landed on his right foot with the bucket in his hand. After his foot struck the roof he was caused to fall backward and the small of his back came in contact with another bucket.

Appellant was taken to St. Louis County Hospital on the day of the accident, where he remained until the following day when he was transferred to St. John's Hospital in the City of St. Louis. He was discharged from the latter on July 10, 1950. According to his testimony the appellant suffered pain in his back immediately after the fall, and while in St. Louis County Hospital he made complaint thereof. In St. John's Hospital the pain in his back persisted, and he complained thereof "every day and night". Dr. Leo Will, who took charge of and treated appellant from the time he entered St. Louis County Hospital until October 3, 1950, was, according to appellant, informed of the pain in his back every time he saw the doctor, which was "about every other day" except during the time the doctor was on vacation. Appellant testified further that while a patient in St. John's Hospital there was swelling of his back covering an area about the size of the palm of his hand which had a thickness of "a good half inch". There was also testimony by appellant that, subsequent to being discharged from St. John's Hospital, he received heat treatments for his back condition at the office of Dr. Will. It should be observed that appellant emphasized that prior to June 21, 1950, he never experienced any pain in his back, regardless of the function and use made thereof.

Mrs. Bessie Szepanski, wife of appellant, testified she saw a discolored area on her husband's back when he returned home from St. John's Hospital, and his daughter testified she observed a "spot" about five by nine inches, puffed up half an inch across "the waist line part of the back or maybe a little above". This was witnessed by the daughter while her father was in St. John's Hospital.

Dr. Alexander Harell examined appellant June 26, 1952, and again on September 16, 1952. Based upon these examinations the doctor found that appellant had a list in his back to the right, the lumbar spine was held rigidly, and there was point tenderness over the posterior spinal processes of "the third or fourth lower lumbar vertebra". X-rays taken pursuant to orders of Dr. Harell showed "a very considerable amount of arthritis—the unusual amount of arthritis especially in the lower last few dorsal vertebrae which clearly show evidence of having become bridged across by calcification, arthritic changes with some false joints and so on. There is also evidence of marked hypertrophic changes in the lower lumbar vertebrae especially around the fifth lumbar", * * * "and in addition some narrowing of the intervertebral disc between the twelfth and eleventh dorsal vertebrae, among others".

A hypothetical question was propounded and it is significant to note that Dr. Harell stated if appellant had suffered no back pains prior to his fall and that there was an onset of pain immediately subsequent thereto, it was his opinion that the injury and condition of appellant's back as determined by the doctor was the result of the accident. Based upon his examination and the manifestations of the X-rays, Dr. Harell was of the opinion that appellant had sustained a disability in his back of "Twenty percent for the back alone", and "a total combined partial disability of Sixty percent as compared to the man as a total".

Dr. Will, the treating physician from the date appellant entered St. Louis County Hospital until October 3, 1950, as a witness for respondents, denied that appellant complained to him of pain in the back while a patient in the two hospitals, and denied observing a bruised spot at any time on the back of appellant. He admitted that in September, 1950, subsequent to appellant's discharge from St. John's Hospital, appellant informed him of pain in his back, and related it to a fall in his yard sustained in connection with work appellant was doing on a sewer. Upon receiving that complaint, Dr. Will took X-ray pictures of the back and also examined the X-rays taken in St. Louis County Hospital. The X-rays revealed that appellant had some hypertrophic changes in his spine of several years' duration, which condition was not the result of the accident. It was further developed by

the doctor's testimony that the X-rays taken in St. Louis County Hospital and those made by him showed no injury to appellant's back.

Dr. J. P. Murphy, in consultation with Dr. Will, examined X-rays of appellant's right heel on June 29, 1950. On September 24, 1952, being the first day of the hearing before the referee, Dr. Murphy examined appellant. Appearing as a witness for respondents, Dr. Murphy testified his examination disclosed appellant was able to bend forward to * * * "about Seventy Five to eighty degrees" * * *. Appellant complained to the doctor of pain in the lumbo-sacral area, but the doctor found no muscle spasm. Physiological curves of the spine were present, but he had some flattening of the lumbar spine when he came to an erect position. Dr. Murphy saw no evidence of injury on appellant's back. X-rays of the back were taken which revealed arthritis that had "existed over a period of years". An examination of the X-rays taken in St. Louis County Hospital by Dr. Murphy disclosed small spurs, particularly on the third, fourth, and fifth lumbar vertebrae, and some hypertrophic arthritis of the lumbar spine. Comparison by the doctor of the X-rays of St. Louis County Hospital with those taken by him demonstrated no marked difference in appellant's back, and it was his opinion that the hypertrophic arthritis revealed by the X-rays taken in St. John's Hospital was present "for years" prior to June, 1950. Dr. Murphy found no objective evidence of limitation or disability upon his examination of appellant's back. In response to a hypothetical question, the doctor expressed an opinion that appellant did not sustain injury to his back as a result of the accident of June 21, 1950, which resulted in disability on the date of the examination.

The patient record of appellant prepared in the usual manner by St. John's Hospital showed all complaints registered by him related only to his foot and ankle. And upon physical examination no back injury was discovered, at least the record was silent in that respect.

In rebuttal appellant denied informing Dr. Will in September of 1950, or any other time, that he injured his back while performing work in connection with a sewer. However other facts were developed by appellant which had a direct bearing upon his back condition. It seems that on February 2, 1950, slightly more than four and a half months prior to the compensation accident, appellant was involved in an automobile collision. He employed a lawyer for the purpose of collecting damages for him resulting from said collision, and the lien letter written by his attorney was offered in evidence, from which it appears that appellant was seeking remuneration for personal injuries and property damage. On March 4, 1950, appellant was examined by Dr. Harry Thieme, who testified in the instant case as a witness for respondents. In obtaining the history, appellant informed the doctor that on February 2, 1950, while getting in his machine, it was struck by a truck and his back, right shoulder, and elbow were injured. A physical examination made by the doctor revealed a moderate degree of restriction in motion of the back, and some spasm of the right lumbar muscles. X-rays showed moderate degree of chronic arthritis, and evidence of old protusion of the disc in the upper borders of the body of the second lumbar vertebrae.

Subsequent to that examination appellant's lawyer made demand upon the insurance company interested in the claim. By agreement between the insurance company and said lawyer, appellant was examined on August 15, 1950, by Dr. A. H. Diehr. Dr. Diehr, testifying as respondents' witness, stated he obtained history from appellant, and was told about the automobile collision; that as a result thereof appellant was knocked against the windshield, he was thrown forward, then came back. Complaint was made to Dr. Diehr of pain in the lumbo-sacral area. It was readily apparent to the doctor that appellant had suffered an injury to his right foot. This was manifested by swelling in that extremity. Physical examination of appellant's back revealed no muscular contraction, however,

X-rays of the back disclosed some arthritis, but no evidence of fracture or dislocation of any of the vertebrae. During the course of the examination appellant did not associate his back pain to the June 21, 1950, accident, but related it to the accident of February 2, 1950.

Following Dr. Diehr's examination and on September 7, 1950, appellant's claim resulting from the automobile collision was settled for $400, and a release was executed by him. By the terms of the release appellant acknowledged full satisfaction of all claims on account of personal injuries and property damage resulting from the collision on February 2, 1950.

The sole point made by appellant in this court is that by the overwhelming weight of evidence he established injury to his back as the result of the accident on June 21, 1950, and his right to compensation therefor.

■ As the reviewing court we may not substitute our judgment on the evidence for that of the Industrial Commission, but we are authorized to decide whether the Commission could have reasonably made its findings and reached the result it did upon consideration of all of the evidence before it; and to set aside the award if contrary to the overwhelming weight of the evidence. Wood v. Wagner Electric Corporation, 355 Mo. 670, 197 S.W.2d 647; Thacker v. Massman Construction Company, Mo.Sup., 247 S.W.2d 623; Seabaugh's Dependents v. Garver Lumber Mfg. Co., 355 Mo. 1153, 200 S.W.2d 55; Sams v. Hayes Adhesive Co., Mo.App., 260 S.W.2d 815; Teel v. F. Burkart Manufacturing Company, Mo.App., 271 S.W.2d 259.

■ In determining the issue presented, we view the record in the light most favorable to the findings of the Commission, and consider the favorable inferences that tribunal had a right to draw from the evidence before it, and then determine whether the Commission's findings, even if supported by competent and substantial evidence, are contrary to the overwhelming weight of evidence in the entire record. Thacker v. Massman Construction Company, supra; Rendleman v. East Texas Motor Freight Lines, 355 Mo. 287, 196 S. W.2d 171.

■ While it is apparent from appellant's testimony that he may have sustained an injury to his back as the result of the instant accident, it is equally obvious that the facts on that issue were by no means uncontradicted, and since the Commission found against appellant on that score, we may not view the record as we might had the Commission found that appellant had sustained a back injury as the result of said accident. We shall not burden this opinion with reiteration of the facts. It is sufficient to observe that Dr. Harell, appellant's only medical witness, expressed his opinion that the back condition was referable to, and caused by, the accidental fall, upon the express assumption that appellant suffered no pain prior to the fall. Two doctors, one selected by appellant, who examined him in connection with the automobile accident of February 2, 1950, testified appellant was not free from prior back pains. To these doctors appellant attributed his back condition to the automobile collision. In view of this state of the record it would appear that appellant's claim of back injury depended largely on the testimony of himself, his wife and daughter. While there may have been sufficient evidence, if accepted by the Commission, to have supported an award in appellant's favor, the Commission was not compelled to believe such testimony, but was at liberty and privileged to reject all or any part thereof which it did not consider credible, and accept as true contrary evidence adduced by respondents. Sams v. Hayes Adhesive Co., supra; Teel v. F. Burkart Manufacturing Company, supra.

■ Upon careful consideration of the record, we conclude that there was substantial evidence produced to support the award of the Commission, and that its findings were not against the overwhelming weight of the evidence.

It therefore follows that the judgment of the circuit court affirming the award of the Commission should be affirmed by this court, and it is so ordered.

WM. R. COLLINSON and DOUGLAS L. C. JONES, Special Judges, concur.