**STATE of Missouri ex rel. Pauline SIRNA, Respondent,**

**v.**

**Fred R. JOHNSON, Director of Liquor Control for Kansas City, Missouri, Bernard C. Brannon, Chief of Police of Kansas City, Missouri, and George L. Atkeson, James A. Moore and James C. Davidson, Constituting the Liquor Control Board of Review for Kansas City, Missouri, Appellants.**

No. 22346.

Kansas City Court of Appeals.

Missouri.

Feb. 6, 1956.

David M. Proctor, City Counselor, James H. Coonce, Asst. City Counselor, Kansas City, for appellants.

Jerome Walsh, Kansas City, for respondent.

BROADDUS, Judge.

This is an appeal from the judgment of the Circuit Court of Jackson County, reversing the decision of the Liquor Control Board of Review of Kansas City, which sustained the order of the Director of Liquor Control, denying the application of Pauline Sirna to sell intoxicating liquor by the package.

On February 25, 1952, Mrs. Pauline Sirna filed a written application with Fred R. Johnson, the Director of Liquor Control of Kansas City, for a permit to sell intoxicating liquor by the original package at 4901 East Truman Road in Kansas City. In the affidavit attached to the application Mrs. Sirna stated that "I am the person who is to be, in fact, actively engaged in the actual control and management of the particular liquor establishment for which the permit is sought, and that the answers and information given in this application are true and complete according to my best knowledge and belief."

This application is divided into six sections. Section "A" calls for "Personal Information." In that section appear 26 questions and the answers of Mrs. Sirna thereto. Section "B" relates to "Information on Premises" and there 9 inquiries were made of Mrs. Sirna, to which she replied. Section "C" refers to "Financial Statement" and there Mrs. Sirna answered the 8 questions propounded to her. Then follows the section (D) which gave rise to this controversy. It states: "If business is a *partnership*, complete this section. 1. Name and address of each *partner* or person with financial interest in the *partnership*." Mrs. Sirna made no answer to this inquiry, nor did she answer any of the questions appearing under the next section (E). The latter was to be "completed if business is owned by a corporation." Section "F" is entitled "Statements." Here Mrs. Sirna was asked (1) "Will you at all times permit the entry of any police officer * * * for the purpose of inspection and search?" (2) "Will you permit the removal of all things and articles which are had in violation of the Ordinances of Kansas City, Missouri, and the laws of the State of Missouri?" (3) "Do you consent to the introduction in evidence of such articles in any proceedings * * * for the suspension or revocation of the permit for which this application is made?" (4) "Do you promise and agree not to violate any of the ordinances of Kansas City, Missouri, the laws of the State of Missouri, or, the United States in the conduct of the business for which the permit is sought?" To each of these inquiries Mrs. Sirna answered "Yes."

It is conceded that "there was no hearing before the Director" relative to Mrs. Sirna's application. On May 1, 1952, Director Johnson notified Mrs. Sirna that "the application is incomplete in that it does not reveal true ownership and financial interest, thereby is false and fraudulent, and is hereby denied, effective April 28th."

Mrs. Sirna appealed from the decision of the Director to the Liquor Control Board of Review. A hearing was held before the Board on May 27, 1952. At that hearing Mrs. Sirna testified that she was 41 years of age, a resident of Kansas City, Missouri, for 31 years and resided at 520 Park Avenue in said City; that she was the wife of Joseph Sirna, has been married to him for 20 years and was the mother of three children; that she had never been convicted of a felony; that she operated Pauline's Delicatessen at 5413 Truman Road for five years prior to February 23, 1952; that she purchased and has operated the Midway Fruit and Grocery, 4901 Truman Road, since February 26, 1952, having acquired the establishment from Anthony and Maxine Ferrara on that date; that she leases the premises from Andrew Rinie; that the lease is for a term of 3½ years at a monthly rental of $100; that the concern deals in groceries, lunch meats, fresh meats and fruits; that she has a permit from both the State and County to sell liquor in the original package; that the sales thereunder are mostly beer and that she alone "operates the liquor establishment out there"; that

Mr. Sirna has no interest in the operation of the place, but engages in the business of handling and selling produce "on the front there—on the outside of the building"; that to her knowledge her husband was never behind the liquor counter; that she goes to work at the store at ten o'clock after "getting the children off"; that the store is opened for her by Claude Sirna, her employee and uncle; that she has no other employees and no one sells liquor except her uncle and herself and that her husband does not sell liquor there.

Mrs. Sirna further testified that she acquired the Midway Fruit Market in her sole name by Bill of Sale, dated February 26, 1952, from the Ferraras, paying them the sum of $5,170 in cash, together with a note and chattel mortgage in the sum of $2,470.11 representing the purchase price of the fixtures; that she and her husband borrowed $1,800 on their home at 520 Park Avenue, which they owned for ten years, for her to put in the business; that title to the home stood in both their names; that the loan was secured by a note and mortgage in favor of St. John's Catholic Credit Union; that she is retiring this loan at the rate of $50 per month and is liquidating the note secured by the chattel mortgage at the rate of $100 per month; that her husband did not sign the note and chattel mortgage; that the home was acquired 10 years before by a down payment of $300, an inheritance from her mother, and the balance was paid by her from "savings from my husband."

Mrs. Sirna further testified that she does all the buying for the Midway Market, including the liquor; that she deals with the salesmen, places orders for the purchases, tells them what she needs and pays for the merchandise by checks drawn on her own account in the Central Bank, which was opened, without the right of anyone else to draw upon it, on February 26, 1952, when "I bought the place."

Joseph Sirna identifying himself as the husband of respondent, testified that he went to the City Market every morning, did his own buying of produce and handled it on the outside of the Midway Building, entirely; that all of the produce was on the outside, under a canopy in the summertime; that he had his own cash register; that he had "nothing to do" with the sale of groceries or liquor inside the building; that he only went inside the building "whenever I have to go for a drink of water or to the rest room."

Mr. Sirna admitted that he was convicted of a felony on "February 6, 1932. I served six months and 23 days", and was "paroled thereafter." The conviction was for a violation of the National Prohibition Act, 27 U.S.C.A. He had not been convicted of a felony since the repeal of that Act.

The Director, although appearing in opposition before the Board, offered no witnesses or evidence of any kind. Thus the record rested on the sworn testimony of Mr. and Mrs. Sirna, Mrs. Sirna's application for the permit in her sole name and the Bill of Sale from Anthony and Maxine Ferrara to Pauline Sirna, individually.

In its order dated August 1, 1952, sustaining the decision of the Director the Board found "that the applicant (Mrs. Sirna) is not in fact actively engaged in the actual control and management of the particular establishment for which the permit is sought as required by * * * the Liquor Control Ordinance of Kansas City, Missouri. One of the most decisive indices of control and management of a business is ownership and * * * the business here in question was in fact owned by applicant and her husband, Joseph Sirna, who could not qualify as a partner under the provisions of * * * the Liquor Control Ordinance because of having been convicted of a felony under the National Prohibition Act on October 8, 1931."

Thereafter, on August 9, 1952, Mrs. Sirna filed in the Circuit Court her petition for certiorari to review the order of the Board. The writ issued and the Board made its return. After a hearing in the Circuit Court, and on May 3, 1955, the court entered an order reversing the decision of the Board and found "that the relator, Pauline Sirna, d/b/a Midway Grocery and

Liquor Store, as the applicant for the liquor license was an individual 'in fact actually engaged in the actual control and management of the particular liquor establishment for which a permit and license' were sought and that the finding of the Board of Liquor Review to the contrary is not supported by any competent or substantial evidence upon the whole record." And: "There was no competent or substantial evidence upon the whole record to support the finding of the Liquor Control Board of Review that the business in question 'was in fact owned by applicant (Pauline Sirna) and her husband, Joseph Sirna.'"

■ The scope of review by the courts of decisions of administrative tribunals is well settled. In the leading case of Wood v. Wagner Electric Corporation, 355 Mo. 670, 197 S.W.2d 647, 649, it is stated: "The provision of Section 22 [Article V, 1945 Constitution] that administrative decisions 'shall be subject to direct review by the courts as provided by law' refers to the method of review to be provided (certiorari, appeal, etc.) and not to the scope of review 'in cases in which a hearing is required by law.' For the latter, this stated minimum standard (*supported by competent and substantial evidence upon the whole record*) *is mandatory and requires no legislation to put it into effect.* This does not mean that the reviewing court may substitute its own judgment on the evidence for that of the administrative tribunal. *But it does authorize it to decide whether such tribunal could have reasonably made its findings, and reached its result, upon consideration of all of the evidence before it; and to set aside decisions clearly contrary to the overwhelming weight of the evidence.*" (Emphasis ours.)

Was there any substantial evidence that Mr. Sirna was actually engaged, or was a partner in the business? Decidedly there was none. Our Supreme Court in discussing an alleged partnership between husband and wife said in the case of Prasse v. Prasse, Mo.Sup., 77 S.W.2d 1001, 1005, that "to constitute a partnership, 'there must be such a community of interest as impowers each party to make contracts, incur liabilities, manage the whole business and dispose of the whole property, a right which, upon the dissolution of the partnership by death of one, passes to the survivor, and not to the representatives of the deceased.'" And, as said in F. M. Strickland Printing & Stationery Co. v. Chenot, Mo.App., 45 S.W.2d 937, 939: "The law never presumes the existence of a partnership."

■ Was Mr. Sirna to participate in the profits and losses of the business, bind it by contract, have the power to sell the fixtures mentioned in the Bill of Sale from the Ferraras to Pauline Sirna in her sole name, or enjoy and exercise the many other evidences of ownership? He asserted none when called before the Board. Mrs. Sirna swore he had none. No contract or agreement is before us, or sworn testimony of acts of proprietorship from which a full or limited partnership can be deduced. No witness came forward to dispute Mrs. Sirna's claim of sole ownership. No document impeaches the verity of her sworn testimony. The State and County liquor authorities did not question the truth of her position. And it should be pointed out that there is no claim made here that she is not in every way qualified, *as an individual,* to conduct the business sought in her application.

Since we agree with the holding of the court below that the decision of the Board was not supported by substantial evidence, it becomes unnecessary to deal with another question, which has been so ably presented in the briefs of respective counsel.

The judgment is affirmed. All concur.