Christina Evanetta **BOLEN** et al.,
Respondents,

v.

Clyde M. **WALLACE**, d/b/a Commercial
Cartage Company et al., Appellants.

No. 47794.

Supreme Court of Missouri,
Division No. 1.

July 11, 1960.

Motion for Rehearing or to Transfer to
Court en Banc Denied Sept. 12, 1960.

Joseph B. Bott, John J. Alder, Alder &
Morrison, Kansas City, for appellants.

Homer R. Hines, Thomas E. Hudson,
Hudson, Cavanaugh & Fox, Kansas City,
for respondent.

HOLMAN, Commissioner.

This is a proceeding under the Missouri
Workmen's Compensation Law. Section
287.010 et seq. (All statutory references
herein are to RSMo 1949, V.A.M.S.) The
employer, Clyde M. Wallace, d/b/a Com-
mercial Cartage Company, and insurer,
Iowa National Mutual Insurance Com-
pany, have appealed from the judgment
of the circuit court affirming an award of
the Industrial Commission ('Chairman Rose
dissenting) in favor of the dependents
(widow and two children) of the deceased
employee, Woodrow Wilson Bolen. The
award was in the total sum of $12,400.

Deceased was employed as a truck driver
for Commercial Cartage Company. Com-
mercial had a lease arrangement with A. M.
Castle & Company whereby it furnished
trucks and drivers to Castle for its use in

making deliveries, etc. On the date of the alleged injury deceased was operating a truck that had been assigned to Castle. While so assigned the drivers of trucks furnished by Commercial reported to and received directions from Harold D. Sickles, plant manager for Castle. The amended claim named both Commercial and Castle as employers but the award found that Mr. Bolen was an employee of Commercial and not of Castle and, since claimants did not appeal, Castle has no further interest in the case.

The accident is alleged to have occurred at about 8:30 a. m. on February 25, 1957. There was no eyewitness who testified, and no evidence of any res gestae declarations by the employee. Claimants endeavored to prove the accident by the testimony of the widow, by statements made by deceased to office employees of his employer, and to various doctors as disclosed by medical records. All evidence concerning said statements was admitted over the objection that they were hearsay. Claimants also relied upon an alleged admission in the employer's report of injury (filed with the Industrial Commission) which, apparently quoting deceased, recited the following: "Describe in full how injury occurred: I was unloading steel and Standard uses an overhead crane to pick up the bundle. I was guiding the bundle through the door and it slipped out of my hand hitting me in the stomach."

Mrs. Bolen testified that on the date of accident, and for several years prior thereto, her husband had been in excellent health. On the date in question she stated that he came home an hour or two early and was holding his hand over his lower right abdomen apparently in pain; that she observed a discoloration of the skin in that area, "a slight yellow color, like a bruise forming"; that upon the evening of the 25th she observed for the first time that her husband was passing blood in his urine.

There were three employees in the office of Commercial Cartage, C. M. Wallace, son of the owner, Charles A. Byrd, and Mrs. Priscilla Long. Mrs. Long had a list of doctors to whom she sent injured employees for treatment and it was her duty to also prepare the report of injury. Mr. Bolen went to the office on the morning of the 26th and was sent to Drs. Haynes and Centner for examination and treatment. On that day or the next Mrs. Long made out the report of injury heretofore referred to. Mr. Byrd testified that he was present when that was done and that it was prepared by Mrs. Long and Woodrow Bolen; that "according to custom, the employee stands there and tells Priscilla Long what to write and she just types it out." Over objection Mr. Byrd was permitted to testify that on the 26th deceased told him that he had been injured. He said that he was "making a delivery at Standard Steel Works and a bundle slipped and hit him in the abdomen." Also, C. M. Wallace testified over objection that Bolen came to the office on the 26th and reported that he had been injured and wouldn't be able to work; that he had been struck in the stomach by some steel.

The records of Drs. Haynes and Centner recited that Bolen had been "unloading steel and steel slipped and struck patient in side." These doctors saw Bolen in their office almost every day from February 26 to March 8. Throughout that period examinations revealed that he was passing considerable blood in his urine. The record discloses a diagnosis of "contusion of abdomen over bladder and contusion of bladder wall." The evidence indicates that neither of the doctors found any swelling or bruised condition in the lower abdomen, and Dr. Centner stated that the foregoing diagnosis was based on the subjective symptoms only. When the condition of blood in the patient's urine had not cleared up by March 8, Dr. Centner decided that he should be examined by a competent urologist and referred Mr. Bolen to Dr. Robert H. Owens and Dr. James F. O'-Malley.

Dr. Owens, after consideration of the history, caused Mr. Bolen to enter St. Mary's Hospital where, on March 9, a diagnostic cystoscopy was performed which revealed a bladder tumor. A biopsy resulted in a diagnosis that the patient had a malignant tumor of the bladder described as a squamous-type cancer. As a result of that finding Dr. Owens advised immediate radical surgery for the removal of the tumor. That operation was performed on March 13. Near the conclusion of the operation Mr. Bolen developed a cardiac arrest and, although emergency measures were taken which kept him alive for a time, he died about one hour later. Additional medical testimony will be hereinafter stated in connection with our discussion of the point which we consider to be decisive of this case.

■ In order to be entitled to an award in this case the burden was upon the claimants to prove (1) that deceased suffered an accidental injury arising out of and in the course of his employment, and (2) that his death resulted from that injury. Seabaugh's Dependents v. Garver Lumber Mfg. Co., 355 Mo. 1153, 200 S.W.2d 55; Kerby v. Missouri State Highway Commission, Mo.App., 238 S.W.2d 464.

The Industrial Commission found "that the employee herein, Woodrow Wilson Bolen, sustained an accident on February 25, 1957, arising out of and in the course of his employment with Clyde M. Wallace, d/b/a Commercial Cartage Company, and that as a result of said accident he sustained injuries to his urinary bladder and aggravation of a pre-existing squamous cell carcinoma thereof. We further find that as a result of said accident it became necessary to perform surgery to cure and relieve the employee of said injury to the urinary bladder and aggravation of the pre-existing squamous cell carcinoma; and, further, that during such surgery and as a result thereof, the employee died of cardiac arrest. We find and conclude, therefore, that the accident of February 25, 1957, caused,

contributed to and produced the employee's death on March 13, 1957."

"In reviewing a compensation case we have the duty to determine whether the Commission's award is supported by competent and substantial evidence upon the whole record. Sec. 22, Art. V, Const. of Mo.1945, V.A.M.S. This court has said that 'This does not mean that the reviewing court may substitute its own judgment on the evidence for that of the administrative tribunal. But it does authorize it to decide whether such tribunal could have reasonably made its findings, and reached its result, upon consideration of all of the evidence before it; and to set aside decisions clearly contrary to the overwhelming weight of the evidence. Of course, the reviewing court should adhere to the rule of deference to findings, involving credibility of witnesses, made by those before whom the witnesses gave oral testimony.' Wood v. Wagner Electric Corp., 355 Mo. 670, 197 S.W.2d 647, 649; Seabaugh's Dependents v. Garver Lumber Mfg. Co., 355 Mo. 1153, 200 S.W.2d 55, 62.

"In determining whether the Commission could have reasonably made its findings, and reached the conclusion it did reach, upon consideration of all the evidence before it, we view the record in a light most favorable to the findings of the Commission, consider the favorable inferences which the Commission had a right to draw from the evidence before it, and then determine whether the Commission's findings, even if supported by competent and substantial evidence, are contrary to the overwhelming weight of evidence in the whole record. Thacker v. Massman Const. Co., Mo.Sup., 247 S.W.2d 623, 627." Francis v. Sam Miller Motors, Mo.Sup., 282 S.W.2d 5, 11–12.

Upon this appeal it is the contention of appellants that the award is not supported by sufficient competent evidence. Specifically, it is said that (1) there is no competent evidence that deceased sustained an accidental injury arising out of and in the

course of his employment, and (2) there was not sufficient evidence to support a finding that his death resulted from said alleged injury. Since we have reached the conclusion that the last-mentioned contention is meritorious we need not determine the first one. For the purposes of this opinion we will assume that there was sufficient competent evidence that deceased sustained an accidental injury which arose out of and in the course of his employment.

The general question presented herein is whether the death of the employee resulted from the accident. We think the evidence warrants a finding that he died as a result of the operation. Section 287.140 (4) provides that "* * * If the employee dies as a result of an operation made necessary by the injury, such death shall be deemed to be caused by the injury." It would therefore seem that the specific question before us is whether the operation was "made necessary by the injury."

We have concluded that there is no substantial evidence that the operation was made necessary by reason of the injury received by deceased when he was struck in the abdomen. The principal evidence upon that issue was given by Dr. Owens who testified as follows:

"Q. Would you state what the surgery was for, Doctor? A. The surgery was for the removal of the bladder tumor * * *.

"Q. Doctor, did you perform the surgery for any other cause whatsoever? A. No, sir.

"Q. And the final operation in layman's language can we say that was for a cancer? A. Yes. * * *

"Q. Now, was that cancer of the bladder a natural condition or traumatic condition? A. It is a natural condition.

"Q. Is it related in this case in your opinion to trauma? A. No, sir. * *

"Q. Now I am going to ask another question about that cancer. Have you considered the relationship of the trauma to the cancer in so far as a precipitating or aggravating, predisposing cause is concerned? A. I have considered it, yes.

"Q. Now will you tell me in your opinion, what relationship the trauma would bear to the cancer from the standpoint of either aggravation, activation, precipitation or predisposing cause? A. I think none in my opinion. * * *

"Q. I'd like to ask if you have an opinion as to whether that [the bleeding] could be precipitated or the trauma a precipitating cause in so far as this bleeding was concerned? A. Yes, I believe there is a possibility that the blow could have precipitated bleeding.

"Q. The bleeding, Doctor, in your opinion, was it possible to control the bleeding that Woodrow Bolen had when you saw him without surgery? A. It was possible depending upon what you mean by surgery.

"Q. I am speaking of the ultimate belly surgery. A. Yes, it could be controlled by the transurethal approach, by the procedure of an instrument through the channel into the bladder fulgurating the bleeding or coagulating the area of bleeding."

The only connection shown between the injury and the operation is that the injury may have caused the tumor to start bleeding. While that condition resulted in the decision of the physicians to perform the diagnostic cystoscopy, in order to find the cause of the bleeding, there is no evidence (except certain testimony of Dr. Leitch hereinafter discussed) to indicate that the radical surgical operation was performed in order to stop the bleeding. The evidence indicates that the bleeding could have been controlled by a procedure called "fulguration." That fulgurating procedure was,

in fact, performed at the time of the cystoscopy. Therefore, viewing the evidence most favorably to claimants, it seems to us that the most that can be said is that the injury caused the discovery of the tumor but did not cause the tumor or aggravate it in a manner that would reasonably result in the operation. It may not be reasonably said that the injury brought about a condition which necessitated that the operation be performed sooner than would have been required had there been no injury. Nor did the injury make it necessary to perform any different type of operation or under any different circumstances than would otherwise have been performed. The evidence is undisputed that deceased was afflicted with a malignant tumor which had existed for "over six months." The evidence further showed that the tumor was of a type which should have been removed by surgery immediately upon discovery. The need for its removal was of long standing and had existed on the date of the injury and for several months prior thereto. However, neither the existence of the tumor nor the necessity for its removal was known until the cystoscopy was performed. The injury did not create the necessity for the removal of the tumor but simply set in motion circumstances which revealed the existing necessity for its removal.

In rebuttal the claimants presented Dr. C. G. Leitch, a specialist in internal medicine. This witness had not examined deceased but had made an examination of the hospital records and autopsy report relating to Mr. Bolen. He testified as an expert upon the basis of the information contained in those records. While he expressed the opinion that the trauma would not influence the growth of the tumor, he stated that the hemorrhage "jeopardized this man's existence" and that the accident could not be "excluded as a causative factor in the subsequent death of Woodrow Bolen."

Our analysis of the entire testimony of Dr. Leitch, however, indicates that he based his opinion that the accident and hemorrhage were causative factors in the death of Mr. Bolen upon the following reasoning: (1) the accident caused bleeding, (2) the bleeding caused the discovery of the tumor, (3) the existence of the tumor led to the operation, and (4) cardiac failure occurred during the operation. He therefore concluded that if the accident had not occurred the bleeding would not have occurred, the tumor would not have been discovered, the operation would not have been performed at that time, and Mr. Bolen would not have died on the date he did. In so testifying, we think Dr. Leitch demonstrated that his conclusions as to causation were erroneous and that they did not amount to substantial evidence of legal causation.

▇ Dr. Leitch also expressed an opinion that the employee "died as a result of cardiac arrest occurring during surgical treatment incident to a hematuria occasioned by a trauma to his urinary bladder in which there was a resident carcinomatous growth." For reasons hereinafter stated we do not accord substantiality to that opinion. In the first place, subsequent explanations of the opinion by the witness greatly diminish its force and make it susceptible to the interpretation that it is based upon the fact that the bleeding caused the discovery of the tumor as discussed in the preceding paragraph. Furthermore, we have examined the records upon which Dr. Leitch based his opinion and do not find anything of substance therein upon which to base the opinion heretofore quoted. We have recently stated that the " 'facts upon which an expert's opinion is based, like the facts sufficient to support a verdict, must measure up to the legal requirements of substantiality and probative force and "The question whether such opinion is based on and supported by sufficient facts or evidence to sustain the same is a question of law for this court." Hall v. Mercantile Trust Co., 332 Mo. 802, 820, 59 S.W.2d 664, 672; Ambruster v. Levitt Realty & Inv. Co., 341 Mo. 364, 374, 107 S.W.2d 74.' " Craddock v. Greenberg Mercantile Co., Mo.Sup., 297 S.W.2d 541, 548. Dr. Leitch's

last-quoted opinion (that Mr. Bolen died of cardiac arrest occurring during surgical treatment for a hematuria) is based upon an assumption of which there is no substantial evidence, namely, that the surgery was performed to stop the bleeding. There is no evidence to support that assumption. The bleeding was treated by fulguration during the performance of the diagnostic cystoscopy. The radical surgery was performed not to stop bleeding, but to remove a resident malignant tumor. The opinion under consideration is not only unsupported by the records examined by Dr. Leitch but is contrary to the overwhelming weight of the evidence.

Upon the issue of causation claimants rely entirely upon the case of Manley v. American Packing Co., 363 Mo. 744, 253 S.W.2d 165. We do not think that case supports their position. In Manley there was a series of two injuries and the evidence warranted a finding that the first injury weakened the employee's knee and that said weakened condition caused a fall which resulted in a second leg injury and his death occurred during an operation to repair the condition of the injured leg. Therein, this court properly held that the evidence supported an award of compensation because of the evidence that the second injury and death resulted from the original injury. That situation is quite different from that which existed in the case at bar. As we have stated, the evidence indicates that the injury to Mr. Bolen did not cause the tumor or aggravate it in a manner which would necessitate the performance of the operation for its removal.

In conclusion, we hold that the evidence was not sufficient to reasonably support the finding of the Industrial Commission "that as a result of said accident it became necessary to perform surgery to cure and relieve the employee of said injury to the urinary bladder and aggravation of the pre-existing squamous cell carcinoma," and hence the award is not supported by competent and substantial evidence upon the whole record. See Seabaugh's Dependents v. Garver Lumber Mfg. Co., supra, and Kerby v. Missouri State Highway Commission, supra.

We have examined the motion of respondents to dismiss the appeal because of appellant's failure to comply with S.C. Rules 1.04 and 1.08, 42 V.A.M.S. and find it to be without merit. It is accordingly overruled.

The judgment of the circuit court is reversed and cause remanded with directions to enter a new judgment reversing the award of the Industrial Commission.

COIL, C., concurs in result.

HOUSER, C., concurs.

PER CURIAM: The foregoing opinion by HOLMAN, C., is adopted as the opinion of the court.

All concur except DALTON, J., who concurs in result.