**MISSOURI STATE BOARD OF PHARMACY, Appellant,**

v.

**James A. KENNEDY, Respondent.**

**No. KCD 26470.**

Missouri Court of Appeals, Kansas City District.

July 1, 1974.

———◆———

John C. Danforth, Atty. Gen., Daniel P. Card, II, Asst. Atty. Gen., Jefferson City, for appellant.

R. Lawrence Ward, Shughart, Thomson & Kilroy, Kansas City, James W. Gallaher, Farmer & Gallaher, Jefferson City, for respondent.

Before DIXON, C. J., and SHANGLER and WASSERSTROM, JJ.

WASSERSTROM, Judge.

This proceeding constitutes a review of denial by the Missouri State Board of Pharmacy of a pharmacy license to an applicant, James A. Kennedy. After denial of that application by the Board, Kennedy filed a complaint before the Administrative Hearing Commission pursuant to § 161.302 (all statutory references in this opinion being to RSMo 1969 unless otherwise noted). After a hearing, the Commissioner reversed the action of the Board and ordered it to issue a license to Kennedy. Thereupon, the Board appealed to the Circuit Court of Cole County under the provisions of the Administrative Procedure Act, § 536.100 through 536.140, with the result of an affirmance by the Circuit Court of the Commission. Thereupon, the Board further appealed to this court. On January 23, 1973, this court sustained a motion by Kennedy for interim relief and ordered the Board to issue Kennedy a license to practice pharmacy in Missouri pending final disposition of this appeal.

Kennedy's initial application to the Board was filed in 1962 under the reciprocity provisions of § 338.040. The basis for asking reciprocity was that Kennedy had been licensed as a pharmacist in 1954 under the laws of Ireland. That initial application was denied by the Board on the ground that Kennedy was not then a citizen of the United States.

Thereafter Kennedy became naturalized and renewed his application to the Board in 1971. The new application was denied by the Board on January 16, 1972, on the ground that "the education required [in Ireland] is not on the level of competence with the requirements of our own students."

On its present appeal from the reversal of its action by the Commission and affirmed by the Circuit Court, the Board assigns two points of error. First, it contends that the decision of the Commission is unsupported by competent and substantial evidence; and second, it contends that the Commission erred in the interpretation of § 338.040, and particularly in ruling unlawful the Board's Rule 1 with respect to the matter of reciprocity. Kennedy raises a counter point that the Board's denial of his application deprived him of his consti-

tutional rights in violation of the equal protection and due process clauses. This latter point by Kennedy need not be considered, in view of our conclusion that the Board's denial of the license was properly reversed by the Commission.

## I.

The issues in this case arise under § 338.040, which provides:

"The board of pharmacy may issue licenses to practice as pharmacists in the state without examination to persons who have been legally registered or licensed as pharmacists in other states or foreign countries. Any applicant for a license under this section shall present satisfactory evidence of qualifications equal to those required from licentiates in this state, and that he was registered or licensed by examination in another state or foreign country, and that the standard of competence required in the other state or foreign country is not lower than that required in this state; but no license shall be issued until the board is satisfied that the other state or foreign country accords similar recognition to the licentiates of this state. Applicants for license under this section shall, with their application, forward to the Secretary of the Board of Pharmacy the sum of one hundred dollars as a fee for the license."

For the purposes of this case, the requirements of this section to be considered are: 1) that Kennedy have qualifications equal to those required from Missouri licentiates; 2) that the standard of competence required in Ireland be not lower than that required in Missouri; and 3) that Ireland accord similar recognition to Missouri licentiates.

The Commissioner found that all three of these requirements are satisfied. The Board contends these findings are not supported by the evidence with respect to any of those three requirements. We look to the record to see whether the evidence as a whole does support the Commissioner's findings.

## A.

The first two of the three requirements listed above obviously contain considerable overlap. Neither the statute nor any administrative regulation undertakes to define or distinguish between the concepts of "qualifications" and "standard of competence." One reasonable basis for distinguishing would be to say that "qualifications" refers to the individual background of the applicant, while "standard of competence" refers to the level of performance of pharmacists in the foreign state as a class. Another plausible explanation, and the one offered in Kennedy's brief, is that "qualifications" relates strictly to formal educational background, whereas "competence" has further reference to practical training and experience. The briefs filed on behalf of the Board make no effort at all to distinguish between the two concepts and neither accept nor reject the distinction suggested by Kennedy. The Board itself, in its consideration of Kennedy's application and its ruling thereon, made no distinction whatsoever between the two terms and treated them as coterminous. This approach is also reflected in the administrative rule adopted by the Board to implement the reciprocity statute, that rule being discussed at length in Section II of this opinion. For purposes of this case, these two requirements will be treated as identical in scope and to cover between them all of the concepts just mentioned.

A much more difficult problem, and the one upon which most of the debate in this case has centered, concerns the date as of which the qualifications and standards of competence are to be compared as between Missouri and Ireland. The importance of dates lies in the fact that the standards for admission of pharmacists have varied widely in Missouri over the years. For example, in 1937 a substantial number of licenses were granted on the basis of the

"grandfather clause" enacted by § 10014, RSMo 1939. Subsequently, the educational requirements for a Missouri license became graduation from a 4-year pharmacy college. Still later, the educational requirement was again increased so that currently a five-year course in an accredited college of pharmacy plus a one-year internship are mandatory.

Because of these changes in Missouri standards, three possible choices are presented: 1) anyone would now be eligible to reciprocity who is at least equal in qualification and competence to Missouri licentiates admitted under the 1937 grandfather clause; 2) the applicant would be required to meet the standard in effect in Missouri at the time he was licensed in the foreign jurisdiction; or 3) the applicant would be required to meet the standards current in Missouri at the time he made his application in Missouri for reciprocity.

■ At all times, Kennedy has argued that the first of those three possible choices should control. Up to at least through the hearings before the Commission, the Board insisted that the third of those possible choices controlled. The Commissioner chose the middle course and adopted the second of the three choices. That standard is eminently reasonable, and the Board in the course of oral argument before this court finally acceded to this as being the correct approach.

■ Pursuant to his adoption of this being the correct rule to be applied, the Commissioner made appropriate findings and the following conclusion:

"Petitioner's educational qualifications which include graduation from a four year college of pharmacy in Ireland, followed by successfully passing a five-day examination, are equal to those required from licentiates in Missouri."

Since this meets the correct legal standard, it remains only to ascertain whether the finding is supported by substantial evidence. In making this review, the evidence and all permissable inferences are to be taken most strongly in support of the Commissioner's findings, and deference must be given to the Commissioner's findings with respect to all matters concerning credibility of witnesses. St. Louis County v. State Tax Commission, 406 S.W.2d 644 (Mo. banc 1966); Wood v. Wagner Electric Corp., 355 Mo. 670, 197 S.W.2d 647 (Mo. banc 1946); State ex rel. Bond v. Simmons, 299 S.W.2d 540 (Mo.App.1957).

Kennedy testified that after completion of the normal high school course, he enrolled at the National University of Dublin with the intention of pursuing a teaching career. After the completion of one year, he decided to change to the study of pharmacy. To that end, he registered with the Pharmaceutical Society of Ireland, a governmental agency, and began a four year term of apprenticeship with registered pharmacists, which was required under the Irish pharmaceutical regulations. Upon completion of that four year apprenticeship, he enrolled in the College of Pharmacy which is operated under the Pharmaceutical Society of Ireland. He further testified that the course of study was four years. The first year's study consisted of chemistry, botany and zoology. Completion of that year qualified the student for the final three years of the study of pharmacy proper. Kennedy testified that he completed the full four year course of study, graduated, and then sucessfully completed a five-day comprehensive examination which included written, practical and oral sections. Passing this final comprehensive examination, he received his license to practice pharmacy and did open his own pharmacy store in Ireland which he operated for a period of seven years from 1954 to 1961.

In the latter year, Kennedy immigrated to the United States where he promptly found work in a series of pharmacies. He did substantially the same work as registered pharmacists, except that he had to be under the supervision of a registered pharmacist. Kennedy testified that the type

and competency of work by pharmacists in Ireland and the United States were substantially the same. Testimony and letters from Missouri pharmacists who had worked with Kennedy and observed his work affirmed that Kennedy was thoroughly competent and equal to pharmacists generally.

Kennedy's testimony concerning his background in Ireland was confirmed by introduction into evidence of his certificate as a Dispensing Chemist and Druggist, No. 35, issued May 26, 1954, by the Pharmaceutical Society of Ireland. His pharmaceutical education was further attested by a letter from the Registrar of the Pharmaceutical Society of Ireland dated April 27, 1962, addressed to the Secretary of the Missouri State Board of Pharmacy, which stated that Kennedy had completed a four-year term of apprenticeship, that he came to the College of Pharmacy in February of 1950, and completed the prescribed course of lectures in 1954. That prescribed course of lectures was described in this letter as, "Chemistry (Organic and Inorganic); Pharmaceutics (Practical and Theoretical); Pharmacognosy (Practical and Theoretical) and Forensic Pharmacy (Theoretical)."

■ It is agreed by the parties that in 1954, the controlling date upon which the Irish and Missouri requirements are to be compared, the Missouri requirement was graduation from a four year pharmacy college. The evidence shows that the training received by Kennedy in Ireland was at least the equivalent of the Missouri standards, thus sustaining the Commissioner's finding on that issue.

The Board attacks the sufficiency of this evidence on the theory that Kennedy's proof depends mainly upon his own word. The Board expressly accepts the rule that the record must be viewed in the light most favorable to the Commissioner's findings, especially with regard to the credibility of witnesses; but nevertheless, it argues "that where such oral testimony from the appli-cant himself constitutes the proof in chief on the subject of his qualifications and formed the basis for the Commissioner's findings, these findings are clearly unsupported by competent and substantial evidence." The Board then proceeds to seine Kennedy's testimony in an effort to find items which it claims to show vagueness, inconsistency, evasiveness and impeachment.

■ As seen from the above summary of the evidence, plaintiff's case did not rest entirely on his own testimony. However, even if it did, matters of vagueness, inconsistency, evasiveness and impeachment go only to credibility and were matters for consideration by the Commissioner. The items complained of by the Board are not so serious as to completely destroy Kennedy's testimony as substantial evidence. To have that effect, the cases hold that the statements would have to be diametrically opposed to one another with respect to some vital question of the case or so glaring as to conclusively show that he testified untruthfully. Atley v. Williams, 472 S.W.2d 867, 869 (Mo.App.1971) and cases there cited.

### B.

As noted, a condition for receiving reciprocity under the Missouri Pharmacy Statute is that the foreign jurisdiction "accords similar recognition." Neither party was prepared at the hearing before the Commissioner to show one way or another whether Ireland provides any reciprocity to pharmacists licensed elsewhere. By consent of the parties, the Commissioner undertook to write to the Pharmaceutical Society of Ireland in order to determine the facts in this regard, and it was agreed that the response received would be deemed evidence in the case.

■ The Commissioner did write as agreed and received two letters in response, enclosing the Irish Pharmacy Act of 1962, and Section XI of the regulations

thereunder pertaining to Registration of Persons Trained Outside the State. Section 5 of that Act and paragraph 58 of those regulations provide for licensure on the basis of reciprocity. In accordance with this additional evidence the Commissioner found: "The substantial evidence upon the whole record supports a conclusion that Ireland has, since enactment of the Pharmacy Act of 1962, accorded recognition to licentiates of foreign countries." This finding is based upon substantial evidence.

## II.

■ Counsel for the Board bitterly attacks the Commissioner's conclusion that the Board's administrative rule respecting reciprocal licensure should not be given effect. That rule provides as follows:

"RECIPROCAL LICENSURE

"1. An applicant for reciprocal registration must have met fully all the requirements in effect in the State of Missouri on the date of registration in the state of original licensure."

The Board now argues that this rule merely clarifies an ambiguity in the statute and is authorized under the broad rule making power prescribed by § 338.140(1).

The Board's argument would carry considerable force if the Commissioner's ruling had been directed against the quoted rule as that rule is presently being construed by the Board. However, the Commissioner's ruling was not directed against the rule as now interpreted, but rather his ruling was that Rule 1 could not stand as it was then being construed by the Board before him. If the Board had construed that rule at the time of the hearing before the Commission as the Board itself does now, the Commissioner would have had no occasion to disagree with the rule because his interpretation of the rule (and ours) is exactly the same as the interpretation given by the Board's counsel in the course of oral argument before this court.

The whole difficulty which was given occasion for this argument comes about because the Board has reversed its position concerning the date to be used for a comparison of the Irish and the Missouri licensure requirements, and thereby it has reversed its interpretation of the above rule. At the time the Board denied Kennedy's application, the letter of denial reflected the Board's then position that it was comparing the two sets of requirements as of the 1971 date of Kennedy's application to the State of Missouri. That fact was not left to inference but was expressly spelled out in the Board's brief before the Commission in which it stated: "The application on which this petition is based was filed shortly before August 24, 1971 (Respondent's Exhibit 16) and respondent would contend that this should be [the] controlling time for determining the requirements to be met by any new applicants, whether they be for examination or reciprocity."

That position is in sharp contrast with the position taken in oral argument before this court, where the Board's counsel made the following statement: "Now I think it would be unreasonable, you have got a man who's 50 years old, who has been in the State of Illinois as a pharmacist for 20 years, to say to him you cannot come into Missouri because in 1950 when you were licensed we only required 4 years and Illinois only required 4 years, but today we have upgraded. We are now going to require you to go back for another year . . . ." The matter was further pursued by questioning from the bench with the result that the Board's counsel with commendable candor admitted the Board's change of position:

"Q. Mr. Card, don't you concede here in this argument that the Board would be satisfied with an interpretation of this rule that says the equivalency requirements relate to the time of licensure in a foreign state?

"A. Yes. That's my whole point of relief . . .

"Q. That's different than your brief . . . that's what you want?

"A. Yes."

Reciprocal Licensure Rule No. 1, naturally construed, calls for a comparison of the Irish and Missouri requirements as of 1954. That is exactly the view held by the Commissioner and the one which was applied by him. That view is the one which the Board also has finally accepted. Taken with that construction, Rule No. 1 is entirely proper, and there is no contention by anyone that it is unlawful or that it should not be given effect. There is no longer any conflict between the Board and the Commission with respect to that rule, and there is no controversy left in this regard for resolution by this court.

Affirmed.

All concur.