Elva Mershon, Appellant, v. Missouri Public Service Corporation, Respondent, No. 41096—221 S. W. (2d) 165.

Division One, June 13, 1949.

Wayne Hire, Rufus Burrus and Charles V. Garnett for appellant.

258

*Stanley G. Patterson* and *Patterson, Cowherd, Smith & Patterson* for respondent.

CLARK, P. J.—Workmen's Compensation. Claimant appeals from a judgment of the circuit court affirming an award of the Industrial Commission denying all relief to claimant for the death of her husband.

Charles Mershon, husband of claimant, was found dead with his throat cut on October 26, 1945. It is conceded that his death was due to self-inflicted knife wounds. At the time and for several years prior to his death he was employed as local manager by respondent, a public utility engaged in manufacturing and distributing electric current. His duties were to service and repair transmission lines, transformers and other electrical equipment, read meters, and collect accounts for his employer.

Appellant filed a claim for compensation alleging that "Insured, while attempting repairs to transmission lines, transformers and other electrical equipment, came in contact with high voltage wires and suffered electrical shock from which he died."

Respondent denied that Mershon died as a result of an accident arising out of and in the course of his employment and stated that his death resulted from and was directly caused by an intentional self-inflicted stab wound in the throat and neck.

Mershon left his home on the morning of October 25 in a truck which he used in his work. He had previously received complaints from customers of poor electric service. About nine o'clock that morning his truck was seen parked near a gasoline filling station about one hundred yards from a substation enclosing one of the transformers maintained by his employer. When he failed to return home for lunch a search was begun and continued through the day. The next morning bloodhounds were obtained and led the searchers across fields nearly a mile to a ravine where Mershon's dead body was found. In addition to the stab wound in his throat, his body disclosed marks on the left hand, right elbow, right shoulder and left heel. Some of the witnesses said these were burns and other said

they appeared to be burns. One witness observed a mark which he described as a "pit" mark on Mershon's jacket and others testified to a "pit" mark or white spot on some part of the wires connected with the transformer.

The evidence shows that Mershon was apparently in good health, bore a good reputation, enjoyed a pleasant home life, was active in church and civic affairs, owned an attractive home and an interest in a small business, had no past due debts and had a substantial bank account. However, respondent introduced evidence to the effect that, for several months prior to his death, Mershon had been despondent and worried over the possibility of losing his job. Witnesses testified that the claimant had expressed concern over her husband's mental attitude and had stated that he had threatened to commit suicide. Claimant denied making such statements, but admitted that she and one of her husband's friends were making arrangements to have Mershon examined by a physician. It is undisputed that some of the officers of the respondent company had made a trip to see Mershon and had assured him he was not in danger of losing his job. They also instructed a friend of Mershon to have him examined by a physician at the expense of the company. Other evidence will be discussed later.

The trial referee found against the claimant, making this specific finding: "I find from all the evidence that the claimant failed to prove that the employee sustained an accident arising out of and in the course of his employment, as alleged, and I also find that the claimant further failed to prove that the death of employee was the result of injuries sustained in an alleged accident arising out of and in the course of his employment. Therefore, compensation must be and is hereby denied." The Industrial Commission affirmed the finding of the referee and made a similar specific finding which was affirmed by the circuit court.

Claimant has appealed and contends that the trial court and the Commission erred: (1) In failing to apply the rule of liberal construction to the Compensation Act and the proceedings under it; (2) In failing to apply the legal presumption against suicide, and in failing to apply the statutory rule that the burden of proof is upon the employer to prove intentional self-destruction; (3) In failing to hold the evidence sufficient to entitle claimant to recover, even if she had the burden of proof.

■ ██ On the first point we concede that the Compensation Act and proceedings under it should be liberally construed in favor of the employee. That is required by statute and by the decisions cited by claimant and many others. However, the rule of liberal construction does not authorize the allowance of a claim which lacks some of the essential elements required by the Act. [Tucker v. Daniel Hamm Drayage Co. (Mo. App.) 171 S. W. (2d) 781.]

Claimant argues that the proof shows that Mershon received electric burns at a place where his duty required him to be; that a presumption arises that such burns were the result of an accident arising out of and in the course of his employment; that such burns caused ''hysteria, extreme pain and mental shock which reduced him to such a state that he was unable to comprehend his act so that the self-inflicted injury [knife wound] was, in fact, an accident;'' that the burden of proving the self-inflicted wound was intentional was upon respondent. Lastly, claimant objects to the sufficiency of the findings by the referee and the Commission.

Claimant cites Wahlig v. Krenning-Schlapp Gro. Co., 325 Mo. 677, 29 S. W. (2d) 128; Oswald v. Caradine Hat Co., (Mo. App.) 109 S. W. (2d) 893; Rittenberg v. Abbott Laboratories (Pa.) 45 Atl. 400; Medina v. New Mexico Consolidated Mining Co. (N. M.) 188 Pac. (2d) 343; Hughes v. Covert Mfg. Co., 66 N. Y. S. (2d) 29; Phillips v. R. & M. Operating Co., 75 N. Y. S. (2d) 898; Gilpin v. Aetna Life Ins. Co. (Mo. App.) 132 S. W. (2d) 686; Del Vecchio v. Bowers, 296 U. S. 280, 56 S. Ct. 190, and Section 3691, Revised Statutes Missouri 1939. [Mo. R. S. A.]

Without reviewing those cases separately, we make the following general observations: Some, or all of them, hold under our Workmen's Compensation Act and similar Acts that the burden is on a claimant to show that an employee's injury resulted from an accident arising out of and in the course of his employment; but, when an employee charged with the performance of a duty is found injured at a place where his duty required him to be, a presumption arises that he was injured in the course of and in consequence of his employment; that such presumption is rebuttable.

Gilpin v. Aetna Life Ins. Co., was not a workmen's compensation case. It was a suit on an accident insurance policy in which the defense of suicide was imposed. The opinion discusses the fact that love of life is so strong in most human beings that, absent evidence to the contrary, death will be presumed an accident rather than suicide.

The facts in no case cited by claimant are similar to those in the instant case. Mershon's body was not found at or near a place where his duty required him to be. There was no direct evidence and little, if any, circumstantial evidence that he was at such a place on the day of his death. The substation where the transformer in evidence was located was enclosed by an industrial fence. The gate was found unlocked. A pencil said to belong to Mershon was found within the enclosure, but there was no evidence as to how long it had been there. His truck was found parked about one hundred yards from the substation at a place where he often left the truck when visiting at the filling station and store as well as when working at the substation. His gloves and tools were in the truck. Claimant's brief states that

the dogs picked up Mershon's trail at the substation. Respondent's counsel in oral argument said the dogs started from the truck. We have been pointed to no page in the transcript and can find nothing in the record to substantiate either statement.

We can find no positive testimony in the record that marks on Mershon's body were caused by electric burns. The coroner said "they told me those were electrical burns." Other witnesses said they were or appeared to be burns. We find no testimony as to how long Mershon had had these scars or burns. The coroner who is a physician issued a death certificate giving the cause of death as suicide.

Claimant assumes that Mershon received electric burns in the course of his employment on the day of his death, and then adds the further assumption or inference that the burns produced such effect on his mind as to cause him to take his life. On the effect on the mind of a person receiving electrical burns, two physicians, one for claimant and one for respondent, testified as experts. Claimant's expert stated that a severe trauma may produce such a shock as to cause the person receiving it to do things which he would not normally do. In response to a long hypothetical question, he said it is "very possible" that electric burns caused Mershon to take his own life. Respondent's expert testified to the contrary and neither expert had ever seen, heard about or read of a single instance where electric burns caused a person to later take his own life.

Claimant places great reliance upon Section 3691, supra, which in part provides: "No compensation shall be allowed under this chapter for the injury or death due to the employee's intentional self-inflicted injury but the burden of proof of intentional self-inflicted injury shall be on the employer or the person contesting the claim for allowance."

Respondent cites cases on accident insurance policies which discuss the presumption against suicide which arises from the natural love of life and fear of death which all normal persons possess. Those cases do not completely agree as to the nature and effect of such presumption, but they generally hold that, while the presumption may shift the burden of evidence, it does not shift the burden of proof. Those cases are not in point here, for they involved no statute fixing the burden of proof.

Section 3691 expressly makes the issue of self-inflicted injury in compensation cases an affirmative defense and casts the burden of proof as to that issue upon the party asserting it. But suicide is not the only defense pleaded in the instant case. Respondent sets up that defense, but also denies that Mershon received an injury arising out of and in the course of his employment, and the burden that he did receive such an injury was upon the claimant.

As already indicated, the evidence that Mershon received an electric shock on the day of his death or even visited the transformer on that day is, to say the least, meager. If we pass that hurdle and infer from the unlocked gate, the pencil found within the enclosure, the spot on the transformer, the spots on Mershon's jacket, and the scars of uncertain origin and duration on his body that he received an electric shock on the day of his death, we must build thereon a further inference. We must infer that such a shock, without completely disabling him, so disordered his mind as to cause him to leave a place where he would likely receive aid and travel across fields to an inaccessible spot and take his own life. This second inference rests upon the vague statement of one expert that such result could "very possibly" happen.

This is not the claim of an employee seeking compensation for disability due to electric burns. It is a claim of a dependent for loss of support due to the *death* of claimant's husband, which claim is based upon the theory not only that he received an accidental injury arising out of and in the course of his employment, but that his death resulted from such injury. The burden is on claimant to prove such an injury and, since the circumstances do not raise an inference that the death was due to the injury, the burden is on her to show a causal connection between the injury and the death. If she has introduced evidence tending to sustain her burden as to such injury and consequential death, then upon the defense of suicide the burden of proof, under the statute, is upon respondent.

. It is conceded that Mershon took his own life. The nature of the wound and Mershon's open, bloody knife lying near his hand unerringly point to intentional suicide unless his mind was so disordered that he could not form such intention. The expert who testified for claimant said there is a school of thought, to which he did not subscribe, that suicide without more is proof of insanity. The law does not accept such idea. Concede that self-destruction is never prompted by a normal mind, yet if done with sufficient mental power to know the purpose and effect of the act, even though dominated by a disordered mind, it is intentional suicide. [71 C. J., p. 638, sec. 392.] But even though Mershon was insane when he took his life, claimant cannot recover unless his insanity was due to electric burns accidentally received by him in the course of his employment. Evidence that it was so caused is vague. On the other hand there was substantial evidence that Mershon was worried and despondent for some time before his death. It is a well known fact, and one of the experts so testified, that worry and despondency are frequent causes of suicide.

As a reviewing court it is our duty to sustain the findings of the referee, the Commission and the circuit court unless, upon the whole record, we can hold that such findings are not reasonably supported by competent and substantial evidence. We hold that the findings

264

in this case are abundantly supported by such evidence. [Williams v. Planters Realty Co. (Mo. App.) 160 S. W. (2d) 480; Seabaugh's Dependents v. Garver Lumber Co., 355 Mo. 1153, 200 S. W. (2d) 55; Wood v. Wagner Electric Co., 355 Mo. 670, 197 S. W. (2d) 647.]

Claimant contends that the referee did not make a specific finding as to whether Mershon's death was or was not due to self-inflicted injury. She is not in position to complain on that ground because she did not request the referee or Commission to include a finding upon that issue. [Scott v. Wheelock Bros., 357 Mo. 480, 209 S. W. (2d) 149; Williams v. International Shoe Co. (Mo. App.) 213 S. W. (2d) 657; Jones v. Remington Arms Co. (Mo. App.) 209 S. W. (2d) 156.] Besides the findings sufficiently include the ultimate facts. [Kelsall v. Riss & Co. (Mo. App.) 165 S. W. (2d) 329.]

The judgment of the circuit court affirming the award of the Commission denying compensation is hereby *affirmed*. All concur.