Beulah WHEATON, Appellant,

v.

The REISER COMPANY and the Travelers
Insurance Company, Respondents.

No. 24652.

Kansas City Court of Appeals.

Missouri.

June 5, 1967.

Motion for Rehearing and/or Transfer to Su-
preme Court Denied Oct. 2, 1967.

Application to Transfer Denied Nov. 13, 1967.

Robert J. Mann, James L. Williams, McKenzie, Williams, Merrick, Beamer & Stubbs, Kansas City, for appellant.

Jack B. Robertson, Rogers, Field & Gentry, Kansas City, for respondents.

HOWARD, Presiding Judge.

This is an appeal of a workmen's compensation claim initiated by appellant as the widow and sole dependent of William Albert Wheaton, the deceased workman. The referee allowed death benefits including burial expenses, but on appeal to the Industrial Commission, benefits were denied in an award agreed to by two commissioners, Commissioner Cates dissenting. On appeal to the Circuit Court of Jackson County, Missouri, the award of the Industrial Commission was affirmed, and claimant has duly appealed to this court.

Deceased was a painter employed by the Reiser Company and worked full time in and around the Muehlebach Hotel in Kansas City, Missouri. ON the date of his death, October 7, 1963, he was working in the lobby of the hotel removing varnish from the lower five feet of large square wooden pillars. He would paint varnish remover on the pillar, and after allowing time for it to soften the varnish, would scrape the varnish from the pillar, putting the scrapings in a tin can and would sand the rough places. He had been occupied at this task since morning and in the afternoon he was observed by the bell captain to fall against the pillar on which he was working. He clutched at the pillar and fell to the floor all in one motion. He first fell on his buttocks and then over on his back striking the back of his head on the marble (or tile) floor. He did not move after he fell and appeared to be unconscious. An ambulance was called and deceased was taken to a hospital, where he was pronounced dead on arrival. Although the witness was looking at deceased at the time he fell, the witness did not see him slip or stumble, and he positively testified that deceased did not trip over the rug which was on the floor near the spot where deceased fell. The witness did not pay particular attention to the floor, but did not see any object which might have caused deceased to fall and did not observe that the floor was slick. The witness looked at deceased after he fell and did not see any lacerations or bruises, although he did observe a spot of blood about the size of a quarter on the floor after deceased was moved, which was at the place where deceased's head had rested.

An autopsy was performed by a deputy coroner of Jackson County, Missouri. He testified that the heart was normal in size and that there was a moderate amount of sclerosing of the aorta and of the coronary vessels. He found no evidence of an occlusion of the coronary vessels and there was no evidence of scarring of the heart muscle itself. There was a fracture of the fifth and sixth ribs just to the right of the sternum. A massive subdural hemorrhage was discovered over the right cerebral hemisphere, which in the doctor's opinion was the cause of death. In answer to a hypothetical question the doctor testified that in his opinion, based upon reasonable medical certainty, the death was caused by cerebral hemorrhage due to trauma to the head. The doctor observed a laceration on the left side of the scalp. He did not find any "scarring or bruising or swelling or edema on the right side of his head." He was not specifically asked whether or not there were any lacerations, bruises, etc. on the back of his head. On cross-examination, the doctor denied that spontaneous subdural hemorrhage is

quite common. He stated that in his fifteen years of performing postmortem examinations, he had never encountered a spontaneous subdural hemorrhage; all that he encountered were due to trauma, and such hemorrhages were not common in the absence of trauma. He stated that the hemorrhage in this case was caused by some trauma to the right side of the head. He did not know what caused deceased to fall to the floor.

He testified in response to leading questions on cross-examination that coronary insufficiency "can" cause fainting or blackout spells; that this "possibly" could have caused deceased's fall, if he was exerting himself more than usual or "possibly" if deceased's medicine had worn off.

The doctor did not determine which blood vessel had ruptured to cause the hemorrhage in deceased's head, and he testified that such hemorrhages were frequently slow in developing, but that the speed with which they develop depends upon the size of the blood vessel that ruptures. He admitted that "it was possible" that the hemorrhage here in question had existed for some time and developed slowly; that it was "possible" that the hemorrhage preexisted the fall; and agreed that such possibility was "as possible as the other conclusions in the case."

The doctor testified that there were no aneurisms in deceased's brain. He specifically testified that deceased's hemorrhage was caused by trauma, but he was unable to say how long it had existed and that it was "possible" that the hemorrhage could have existed prior to the fall and have been the cause of the fall.

Dr. Williams testified that he had removed deceased's gall bladder in 1962 and that deceased recovered satisfactorily from the operation. Prior to the operation, Dr. Wright was called in and diagnosed deceased's complaints of chest pains as being coronary insufficiency. He prescribed medication and diet and considered deceased to be "a satisfactory therapeutic result."

He testified that he could not say that deceased's condition could cause a blood vessel in the brain to rupture. There was some x-ray evidence of heart enlargement and Dr. Wright explained that there might be variations in the size of the heart appearing on various x-rays because sometimes the x-ray would catch the heart fully expanded and sometimes contracted. He further testified that preparation of a dead body might cause some shrinkage of the heart.

On the basis of the foregoing evidence the commission found that there was sufficient evidence, and inferences therefrom, to show how deceased's injury occurred and that, therefore, the presumption which arises when an employee is found dead, or injured, at a place where his employment required him to be, went out of the case. They concluded "that the fall with which we are here concerned was idiopathic in that it arose from an unknown or obscure cause." ·The commission then decided, on the authority of Howard v. Ford Motor Company, Mo.App., 363 S.W.2d 61, that such idiopathic fall was not compensable and that, therefore, claimant could not recover.

In order for claimant to recover she must show that death resulted from an accident arising out of and in the course of employment. Section 287.120 RSMo, 1959, V.A.M.S. There is no question that the accident, i.e., the fall, occurred "in the course of" employment. However, the difficulty arises in determining whether or not the accident arose "out of" the employment. In order to recover, claimant must show a causal connection between the employment and the fall and that the fall caused the hemorrhage which caused deceased's death.

It is not every injury occurring while claimant is at work which is compensable. Only such injuries which arise "out of" employment are compensable. Before it can be held that an injury (or death resulting therefrom) arose "out of" the employment a causal connection between the employment and the accident and injury must

be found. See Liebman v. Colonial Baking Company, Mo.App., 391 S.W.2d 948, where this requirement is set out: "The familiar rule is that an accident will be held to have arisen 'out of' the employment when, from a consideration of all the relevant circumstances, it appears that there was a direct causal connection between the employment and the injury (attributable either to the nature of the employee's duties or to the conditions under which he was required to perform them) so that the accident can fairly be said to have been a rational consequence of some hazard connected with (or aggravated by) the employment. Toole v. Bechtel Corporation, Mo., 291 S.W.2d 874, 879; Gregory v. Lewis Sales Co., Mo.App., 348 S.W.2d 743, 745–6; Scherr v. Siding & Roofing Sales Co., Mo.App., 305 S.W.2d 62, 65; Long v. Schultz Shoe Co., Mo.App., 257 S.W.2d 211, 212; May v. Ozark Central Telephone Co., supra, 272 S.W.2d 849. That is the cardinal requirement for compensability in all cases in Missouri, no matter how or where the accident may have occurred and no matter in what category the causative risk may be classified. Its basic factors are 'causal connection' and 'rational consequence.' When they are shown to exist, the test has been satisfied; otherwise, it has not." See also Kelley v. Sohio Chemical Company, Mo., 392 S.W.2d 255.

To carry her burden of showing such causal connection between deceased's employment and his fall, claimant relies on the presumption that a workman was injured in the course of and in consequence of his employment when he is found injured or dead at a place where the performance of the duties of his employment required him to be. This presumption has been asserted and discussed in such cases as Duff v. St. Louis Mining and Milling Corp., 363 Mo. 944, 255 S.W.2d 792; Oswald v. Caradine Hat Co., Mo.App., 109 S.W.2d 893; Stamps v. Century Electric Co., Mo. App., 225 S.W.2d 493; McClelland v. Hagerty Wrecking Co., Mo.App., 384 S.W.2d 93. In Mershon v. Missouri Public Service Corporation, 359 Mo. 257, 221 S.W.2d 165, the holdings of numerous cases concerning this presumption are summarized as follows: "Without reviewing those cases separately, we make the following general observations: Some, or all of them, hold under our Workmen's Compensation Act and similar Acts that the burden is on a claimant to show that an employee's injury resulted from an accident arising out of and in the course of his employment; but, when an employee charged with the performance of a duty is found injured at a place where his duty required him to be, a presumption arises that he was injured in the course of and in consequence of his employment; that such presumption is rebuttable."

In all of these cases, the presumption is discussed, but in each case the court found that there was evidence showing how the accident occurred, and that, therefore, the presumption went out of the case and the decision was based upon the evidence alone. In the case at bar, claimant contends that we have here an unexplained fall and that, therefore, the presumption does apply; that there is no evidence from which the facts can be determined and that the presumption takes the place of evidence proving that the fall grew "out of" deceased's employment. However, claimant has not considered the recent en banc decision of our Supreme Court in Kelley v. Sohio Chemical Company, 392 S.W.2d 255. In that case a young lady alone in a business office, during the noon hour, heard footsteps behind her and she was struck on the back of the head. She was later found unconscious. Nothing was disturbed in the office and nothing was stolen. There was no evidence as to who committed the assault or why. In this situation, the Supreme Court determined there was evidence as to what happened. In other words, they held that from the evidence it could be determined "how" the injury occurred but not "why". In such situation the court held that the presumption did not apply. The court said: "There was direct and substantial evidence that the claimant was struck on the head by an unknown and unseen assailant who attacked for an unknown

reason, and that there was no robbery or theft; indeed, there was no other crime, so far as the evidence shows. If any such presumption arose at all under these circumstances, it was rebutted by the evidence adduced, and the matter simply stood as a case of assault with the manner and circumstances affirmatively shown, if not the motive. See, on rather analogous facts, Giles v. W. E. Beverage Corp., 133 N.J.L. 137, 43 A.2d 286, aff. 134 N.J.L. 234, 46 A.2d 728, where the presumption was held not applicable because there was no 'lack of evidence.' In that case two unidentified men were seen to enter a liquor store and shoot the manager, without speaking, without committing any robbery or theft, and for no known reason. In Larson on Workmen's Compensation that holding is criticized, § 11.33, because the evidence did not show 'why' the man was shot. If such were to be the rule, then it would seem that a recovery would be more or less automatic in every assault case where a motive was not actually shown, and we do not accept that reasoning."

Likewise, in the case at bar, we know what happened to deceased, but not why it happened. There was direct eye witness testimony as to the details of the fall. However, there is no evidence from which it can be determined "why" deceased fell. In such situation, the presumption contended for by claimant does not arise. We have direct and detailed eye witness testimony that deceased fell against the pillar on which he was working, clutched at the pillar, and fell to the floor, striking the back of his head on the floor. The witness who observed this fall did not see deceased slip or stumble or trip and did not see anything else that would explain why deceased fell. Thus we have a case of a true "unexplained" fall, which by analogy to the unexplained assault in Kelley v. Sohio Chemical Company, supra, is not compensable.

Larson on Workmen's Compensation, Section 11.33 equates unexplained assaults with unexplained falls, and, although we have found no Missouri case so equating the two problems, we believe that such is a logical and rational procedure, and we believe that the discussion of unexplained assaults in the Kelley case, supra, applies equally to this case of an unexplained fall. The court in Kelley said:

"The matter, therefore, stands on the evidence as in one sense a case of 'unexplained' assault, or as the Court of Appeals stated, a 'neutral assault', i.e., one not shown specifically to have arisen out of the employment, or, on the contrary, to have arisen from some outside and personal circumstance or motive. But, in our view, the circumstances have been sufficiently shown by evidence to permit a reasonable inference, on the part of the finders of fact, that the assault had no connection with and did not arise out of the employment. In such a situation the burden still rests upon the claimant to show some direct causal connection between the injury and the employment. Toole v. Bechtel Corp., Mo., 291 S.W.2d 874; Stamps v. Century Electric Co., Mo.App., 225 S.W.2d 493; Mershon v. Missouri Public Service Corp., 359 Mo. 257, 221 S.W.2d 165; Reed v. Sensenbaugh, 229 Mo.App. 883, 86 S.W. 2d 388; Scherr v. Siding & Roofing Sales Co., Mo.App., 305 S.W.2d 62. Our courts have held that there may be an award of compensation if the injury was 'a rational consequence of some hazard connected with the employment.' Toole, supra. See also: Reed v. Sensenbaugh, supra; Gregory v. Lewis Sales Co., Mo.App., 348 S.W.2d 743; Scherr v. Siding & Roofing Sales Co., supra; Ries v. DeBord Plumbing Co., Mo.App., 186 S.W.2d 488. But it has also been held very generally that the employment must in some way expose the employee 'to an unusual risk of injury from such agency which is not shared by the general public.' Gregory v. Lewis Sales Co., Mo.App., 348 S.W.2d 743; May v. Ozark Central Telephone Co., Mo.App., 272 S.W.2d 845; Scherr v. Siding & Roofing Sales Co., Mo.App., 305 S. W.2d 62; Ries v. DeBord Plumbing Co., Mo.App., 186 S.W.2d 488; Williams v. Great Atlantic & Pacific Tea Co., Mo.App.,

332 S.W.2d 296. Upon that basis the injury must have been a *rational* consequence of that hazard to which the employee has been exposed and which exists because of and as a part of the employment. Gregory, Toole, Scherr, Ries, supra. It is not sufficient that the employment may simply have furnished an *occasion* for an injury from some unconnected source. Gregory, Toole, supra; Foster v. Aines Farm Dairy Co., Mo., 263 S.W.2d 421."

■ Respondent contends that in this case there was sufficient evidence to support the finding of the commission that this was an idiopathic fall, i.e., one resulting from some cause personal to the individual, such as physical defect or disease, and as such it is not compensable. However, as noted in the summary of the evidence as heretofore set out, the only testimony on which such a conclusion could be based was that of the deputy coroner, who merely admitted in response to leading questions on cross-examination that various things were "possible". Such testimony that something is "possible" does not constitute substantial evidence. See Seabaugh's Dependents v. Garver Lumber Mfg. Co., 355 Mo. 1153, 200 S.W.2d 55 and Welker v. MFA Central Co-Operative, Mo. App., 380 S.W.2d 481. In the latter case, it is said: "Expert evidence that it is possible that an act could have caused a certain result is admissible as an assurance that such result was scientifically possible, but is not, standing alone, substantial evidence that the act did cause such result. O'Leary v. Scullin Steel Co., 303 Mo. 363, 260 S.W. 55; Adelsberger v. Sheehy, 332 Mo. 954, 59 S. W.2d 644; Wack v. F. E. Schoenberg Mfg. Co., 331 Mo. 197, 53 S.W.2d 28."

Consequently there is no substantial evidence to support the conclusion of the commissioners that this was an idiopathic fall. There was no evidence which would support a finding that the deceased fell because of dizziness or blackout resulting from the coronary insufficiency or the slight arteriosclerosis. The doctor's testimony showed that there was no heart attack or occlusion of the coronary vessels. Any finding to this effect could be based only on speculation and surmise.

The commission's reliance on Howard v. Ford Motor Co., Mo.App., 363 S.W.2d 61, is misplaced, because in that case it was admitted that the fall was idiopathic in nature, that is, it was caused by physical insufficiency of the individual. The fall was admittedly the result of an insulin reaction. Consequently the holding in Howard is not applicable to the case at bar where there is not sufficient evidence to support a finding that the fall of deceased resulted from any physical defect or disease. As noted before, the commission did not specifically so find, but characterized the fall as idiopathic because it "arose from an unknown or obscure cause." As we have heretofore said it arose from "an unknown cause" and, therefore, comes within the purview of the cases heretofore cited dealing with unknown falls and not with idiopathic falls.

■ From the foregoing it is apparent that the claimant has failed to sustain her burden to show by substantial evidence that death resulted from injuries which resulted from the fall, which arose "out of" deceased's employment. She has failed to show the necessary causal connection.

Respondent also contends that claimant has failed to show a reasonable probability that death resulted from injuries, which resulted from the fall, i.e., that the fall caused the subdural hemorrhage, which caused the death. In this connection, respondent relies upon such cases as DeLille v. Holton-Seelye Co., 334 Mo. 464, 66 S.W.2d 834; Mershon v. Missouri Public Service Corporation, 359 Mo. 257, 221 S.W.2d 165; Duff v. St. Louis Mining and Milling Corporation, 363 Mo. 944, 255 S.W.2d 792 and Smith v. Terminal Transfer Co., Mo.App., 372 S.W.2d 659. However, it is unnecessary for us to determine this contention inasmuch as the defects in claimant's case heretofore noted are fatal to her right to recover.

The judgment of the circuit court affirming the award of the Industrial Commission disallowing compensation is therefore affirmed.

All concur.