Harry F. RUSSELL, Deceased et al.,
Appellants,

v.

SOUTHWEST GREASE AND OIL COMPANY, Employer,
and
Aetna Casualty & Surety Company,
Insurer, Respondents.

No. 26529.

Missouri Court of Appeals,
Kansas City District.

May 6, 1974.

John P. Ryan, Jr., Kansas City, for appellants.

James F. Stigall, Raytown, for respondents.

Before DIXON, C. J., and SHANGLER and WASSERSTROM, JJ.

WASSERSTROM, Judge.

On a claim for Workmen's Compensation benefits by the widow and daughter of a deceased employee, the referee denied compensation. His decision was affirmed on review by the Industrial Commission, whose decision in turn was affirmed by the Circuit Court. The claimants again appeal to this court.

At approximately 3:00 p. m. on February 6, 1969, Harry F. Russell, the deceased employee, delivered six 55-gallon drums of undercoating to the Triad Vault Company. Each of these drums weighed approximately 429 pounds and was being transported in an open bed truck fitted with a hydraulic lift at the rear.

Russell backed the truck into the Triad building through large service doors. Then he had a brief conversation with John Heflin, a Triad employee, after

which Russell moved three of the barrels to the lift at the rear of the truck and lowered the barrels by use of the lift to the floor. Heflin observed this operation and saw nothing unusual about the way Russell moved the barrels. At this point Heflin went to the restroom to wash his hands. When he returned the second group of three barrels had been moved to the lift at the back of the truck, the lift was back in the up position, but he did not see Russell. After calling and commencing a search, Heflin discovered Russell just outside the large service doors through which the truck had been driven into the premises. Heflin testified that Russell's face was blue, his eyes were bugged out and he could hear him gargling and gasping for breath. An ambulance was called which took Russell to the hospital where he was pronounced dead on arrival. No one saw Russell from the time he moved the first three drums to the back of the truck until the time that he was found gasping on the ground by Heflin. Russell was unable to respond to questions and made no statement to anyone from the time Heflin found him until his death.

Claimants introduced the testimony of Dr. Edward Robert Nigro, Russell's personal physician. Dr. Nigro testified that he and his associates had been treating Russell for arteriosclerosis since 1952 and that EKGs taken over the years had shown posterior coronary insufficiency with lateral involvement. Although no post mortem was performed and although Dr. Nigro did not examine the body following death, he signed the death certificate showing the cause of death to be "coronary thrombosis–arteriosclerotic heart disease." There was no evidence offered to show any traumatic injury, other than a statement by the widow that approximately 24 hours after the death she observed a darkness on one side of deceased's face in the nature of a bruise.

The record shows that the work being done by Russell on the afternoon of his death was the same usual type of work which he had performed for the previous five or six years. It was customary for him to move barrels of the same type and weight and unload them from his truck without the assistance of any helper, and six barrels constituted a normal delivery.

On these facts the Industrial Commission found that the death was not caused by accident so as to be compensable, stating in this respect as follows:

"The Commission finds from all of the evidence that on February 6, 1969, and for a number of years prior thereto, the employee had been suffering from arteriosclerotic heart disease and that on said date he was performing his normal duties and that his death was not caused by accident or unusual or abnormal strain but was caused by coronary thrombosis precipitated by arrythmia as the result of his normal strenuous work and that the presumption that the employee's death arose out of and in the course of his employment as the result of accident or unusual strain was rebutted by the medical evidence."

Claimants challenge that decision by the following two points: 1) that claimants are entitled to the benefit of a presumption that the death was caused by accident in the course and arising out of employment, which presumption stands unrebutted; and 2) that the Commission erred in following the rule that a heart attack is not "accidental" unless it be the result of unusual exertion and strain.

I.

The Missouri Workmen's Compensation Act, § 287.120, RSMo 1969, V.A.M.S., provides compensation for death of an employee only if "by accident arising out of and in the course of his employment." The Commission held that the claimants had not met their burden of proof of showing these required elements, especially that of "accident". Claimants strenuously oppose that conclusion, arguing that having shown that Russell died under unexplained

circumstances on the premises where he was employed and during the hours of employment, a presumption arises that the death occurred in the course of and in consequence of his employment. As stated in appellants' reply brief, this contention is "the cornerstone of the appellant's (sic) theory of recovery in this case."

### A.

There are a number of decisions in this state which recognize the theoretical validity of the presumption stated, the leading case being Mershon v. Missouri Public Service Corp., 359 Mo. 257, 221 S.W.2d 165 (1949), although strangely enough no Missouri case has been cited or found actually permitting recovery by application of this presumption. However, this presumption does not extend to a showing of the element of "accident". In the many Missouri cases discussing the presumption, the element of accident either plainly appeared or was readily inferable from the surrounding circumstances, and the only debated issue was whether the injury "arose out of and in the course of employment".

There is sound logic in presuming that an unexplained injury or death which occurs on the premises and during the time of employment has a causal connection with the employment activities. Work-relatedness naturally follows as a rebuttable presumption from those facts. That is far different, however, from taking the further step of inferring that such an unexplained injury or death occurred by reason of accident rather than from a natural cause. With respect to this latter matter, there is no logical basis for an inference that the unwitnessed, unexplained death resulted from "an unexpected or unforeseen event happening suddenly and violently," as the word "accident" is defined in § 287.020, RSMo 1969, V.A.M.S.

While there is no Missouri case drawing this distinction, there are decisions from other jurisdictions which are persuasive in that direction. Thus in Maas v. Otis Elevator Co., 140 Pa.Super. 33, 12 A. 814, 816 (1940) the deceased employee died of an unwitnessed heart attack after climbing a ladder to the roof in order to inspect an elevator. This activity fell within the employee's usual and ordinary routine. The court held that there was no presumption of "accident" and that it was therefore error to award compensation to the widow:

"The mere fact that this employee was stricken while in the course of his employment, instead of at his home, or on his way to work, raises no presumption in favor of the claimant. Before she is entitled to an award, the evidence submitted in her behalf, must show either directly or circumstantially, that her husband sustained an accident, within the meaning of the statute."

So also in Hrynkiw v. Davis & Lyon, 24 App.Div.2d 1056, 265 N.Y.S.2d 321, aff'd, 21 N.Y.2d 681, 234 N.E.2d 453 (1967), a painter was found dead on the premises where he had been working. It was held that a presumption cannot be used as a substitute for evidence of accident and that there could be no recovery because of a lack of evidence of any unusual exertion.

Likewise, in York v. State Workmen's Ins. Fund, 131 Pa.Super. 496, 200 A. 230 (1938), a coal miner was found dead just outside the mine alongside two coal cars which had just been dumped, with a third car half emptied. Medical testimony was that death resulted from bursting of a coronary artery. Although the court sustained the granting of compensation on the basis that the inferences drawn by the Compensation Board from all the circumstances were permissible, the court made this pertinent observation: "We readily recognize that a presumption of an accidental death is not raised by simply showing a collapse of an employee while at his work. There must be affirmative proof of an accident . . ."

In a jurisdiction following the lenient rule under which there may be a finding of "accident" even without any unusual

**780**

strain, there has been a refusal to apply the "found dead" presumption without some independent evidence showing an accident in the usual traumatic sense. In this respect, Wilsey v. Reisinger, 76 N.J. Super. 20, 183 A.2d 717, 1.c. 721 (1962) holds as follows:

"We are mindful of the rule, that where an employee is found dead from accident and there is no evidence offered as to just how the death occurred the court will presume that the accident causing the death was one that arose out of and in the course of the employment. [citing cases] However, we find that in each case in which this rule has been invoked the evidence established the occurrence of an 'accident' in the ordinary traumatic sense of the word, as distinguished from accident in the special sense that a work-induced heart attack is, in and of itself, an accident within the meaning of the Workmen's Compensation Act. [citing cases]

"The rationale of the rule is that where death ensues from traumatic injury at a time and place where the employee might reasonably be expected to be in the course of his employment, a presumption arises, or an inference may be drawn that the occurrence arose out of his employment. See Larson, Workmen's Compensation Law, § 10.32 (1952). If the unique concept of heart attack's constituting an 'accident,' were included within the ambit of this principle, recovery in a heart death case would be permitted upon a mere showing that an unwitnessed fatal heart attack was suffered by an employee on his employer's premises during the hours of his employment. This is not the law of this State."

■ We hold that mere proof of an employee being found dead at his place of employment and during the hours of employment does not give rise to any presumption that he suffered an accident. It is incumbent upon the claimant to offer affirmative evidence to carry his burden of proof on that element of the case.

### B.

■ However, the inapplicability of the presumption upon which claimants rely does not result solely from the failure of claimants to make affirmative proof of an accident. Additionally, the decision of the Industrial Commission in this case must be approved on the well recognized principle that when sufficient actual facts are shown by evidence, then the case must be decided upon those facts and inferences fairly to be drawn from them, and that the "found dead" presumption has no part to play.

A leading case establishing this principle is Kelley v. Sohio Chemical Co., 392 S.W. 2d 255, 256 (Mo. banc 1965). In that case, after referring to the presumption and Missouri cases with reference thereto, the court held:

"The cases fairly indicate that if there is evidence of occurrences, circumstances or physical condition which show, directly or by inferences, how the injury occurred, then the matter should be and will be decided on that evidence; and that if a presumption be deemed to have arisen in such instances, it disappears, being merely a procedural invention in the first place."

A particularly good statement of this concept appears in Jackson v. McDonnell Aircraft Corp., 426 S.W.2d 669, 676 (Mo. App.1968) which holds in part:

"We have grave doubts that the presumption arose in this case, and that it must invariably arise in every case, merely because, without any consideration of the surrounding facts and circumstances, a claimant's evidence shows that during his working hours he was found injured at a place where his duties required him to be. * * * We are of the opinion that the presumption *may* arise but that in determining in the first

instance whether it does consideration must be given to all of the relevant evidence which is developed and is binding upon claimant, including such evidence as character of the work assigned to him, the machinery, tools and appliances employed in the performance of his duties, the manner in which his work is customarily performed, the condition of the prior health of the employee, the nature of his injury, and similar pertinent facts and circumstances." (emphasis in the original)

See also Wheaton v. The Reiser Co., 419 S.W.2d 497 (Mo.App.1967) and Stamps v. Century Electric Co., 225 S.W.2d 493 (Mo.App.1950).

■ The facts shown by the record here bring this case within the application of the foregoing rule and exclude operation of the presumption. It stands agreed that Russell had a medical history of heart trouble for seventeen years. His doctor testified that his medical problem was progressive, and it must be noted that at the time of his death Russell was 54 years old and weighed between 225 and 230 pounds. His personal physician, who was intimately acquainted with his condition, gave as the cause of death on the death certificate "Coronary thrombosis–arteriosclerotic heart disease."

Even more importantly, Dr. Nigro testified that the same activity which might have been innocuous previously could in the normal course of development of the heart disease become fatal. In this respect Dr. Nigro testified:

"I think in all these people with arteriosclerotic heart disease, we never know where their tolerance is going to end. One day what is normal for them may not be normal the next day. So he may be doing his normal work today, but maybe to him, that normal work is not normal for him and precipitates or causes an attack. * * * I am trying to say even if he was doing his normal work, his condition could have changed. That what was normal for him at one time was not normal for him that time he did the work."

Furthermore, Dr. Nigro testified that in Russell's condition he was susceptible to a sudden heart attack, that such attacks are not always precipitated by heavy work, and that it is possible that Russell died as a result of natural causes.

Supplementing that medical testimony, other testimony shows that the work being done by Russell on the afternoon of his death was simply his usual, ordinary routine type of work. The barrels were no bigger or different than those which he had been delivering for the past 5 or 6 years. The unloading by him from the truck by the hydraulic lift was no different than what he had previously done. Still further, there is no showing whatsoever of any slip, fall or other similar untoward event.

If any presumption favorable to the claimants ever existed in this case, that presumption crept in only momentarily and disappeared upon the further testimony offered by them before the conclusion of their own case. The evidence is ample to call for a decision upon the facts adduced, as held in the Kelley, Jackson, Wheaton and Stamps cases.

■ Upon final analysis, the evidence discloses three possible causes of death, namely (1) normal progress of the heart disease independent of any employment connection, (2) aggravation by normal strain, or (3) aggravation by unusual strain. Only for the last of those three causes would the employer have any liability for the payment of compensation.

■ Where, as here, the evidence shows more than one possible cause of death and of which the employer could be held liable for only one, the claimant has failed to carry the necessary burden of proof and therefore fails in the claim for compensa-

■ As stated in Schneider, Workmen's Compensation Text, § 1334, page 604:

"It is a general rule that where the evidence in behalf of the claimants indicates two reasonably possible causes of death, for one of which the employer is not liable, the claimant has not sustained his burden of proof, and the presumption that the accident, if any, arose out of and in the course of employment will not apply from the mere fact that the employee was found dead at his place of work."

Closely in point is Duff v. St. Louis Mining & Milling Corp., 363 Mo. 944, 255 S.W.2d 792, 794 (1953) where the employee fell from his place of work to the ground 15 to 18 feet below. The fall was unwitnessed, but medical evidence showed that the employee suffered a heart ailment. An award for compensation was reversed by the Supreme Court on the ground that the claimant had not proved that the injury resulted from an accident arising out of and in the course of employment:

"However, these facts (the place where Duff was last seen, his duties, the thud, where he was found and his condition) are not sufficient to show more than that his death resulted from one or the other of two causes, for one of which but not the other, the employer would be liable. Therefore, we must hold as we did in the Seabaugh case (upon very similar facts) that on the whole record, see Sec. 22, art. V, Const., claimants' proof was insufficient to show that Duff's death resulted from a cause for which his employer would be liable. [citing cases]"

■ It was for the Commission to weigh the evidence and draw the pertinent inferences. If its decision is "supported by competent and substantial evidence upon the whole record" and is not "clearly contrary to the overwhelming weight of the evidence," the Commission's award should be affirmed. Wood v. Wagner Electric Corp., 355 Mo. 670, 197 S.W.2d 647 (banc 1946); Saale v. Alton Brick Co., 508 S. W.2d 243 (Mo.App.1974). The best that can be said for the claimants' proof is that it made a submissible case which would have supported a favorable award if the Commission had chosen to draw inferences favorable to claimants. However, inferences contrary to the claimants are at least equally tenable, so that the Commission's finding against claimants is binding upon the courts. Oswald v. Caradine Hat Co., 109 S.W.2d 893 (Mo.App.1937).

## II.

As an alternative proposition, claimants argue that the Commission erred in following the rule that in order for a heart attack to be compensable, the attack must have resulted from an unusual strain not customarily exerted by the employee in his normal work. Claimants rely heavily upon the writings of Professor Larson, and they cite cases from other jurisdictions representing what is said to be the majority rule permitting recovery of compensation even in situations where the employee has not been subjected to unusual strain.

■ The same arguments and the same authorities were presented to this court and were by this court rejected in Herbert v. Sharp Brothers Contracting Co., 467 S. W.2d 105 (Mo.App.1971), on the basis of authoritative Missouri Supreme Court decisions to the contrary. Since the decision in Herbert, the Missouri Supreme Court in Snuggs v. Steel Haulers, Inc., 501 S.W.2d 481, l.c. 485 (Mo. banc 1973) has reinterated the Missouri rule which requires unusual strain for the showing of an accident. Therefore, now with even more reason than was true when Herbert was decided, this court must adhere to the unusual strain rule.

The judgment is affirmed.

All concur.