Lloyd W. PARRISH (Deceased) and Marjorie L. Parrish, Widow, et al., Respondents,

v.

KANSAS CITY SECURITY SERVICE, et al., Appellants.

No. WD 34362.

Missouri Court of Appeals, Western District.

Oct. 2, 1984.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied Nov. 27, 1984.

Application to Transfer Denied Jan. 15, 1985.

David W. Shinn, Kansas City, for appellants.

Roger J. Staab, Kansas City, for respondents.

Before TURNAGE, C.J., and SOMERVILLE and MANFORD, JJ.

MANFORD, Judge.

This is an appeal from the judgment of the circuit court which affirmed a previous award for worker's compensation death benefits by the Missouri Labor and Industrial Relations Commission. The judgment is reversed with directions.

Appellant, Kansas City Security Service Co. (hereinafter employer) presents two points, which in summary charge that the circuit court erred in affirming the award of the Commission because (1) said award was not supported by substantial and competent evidence, and (2) the award was based solely upon the found-dead presumption which was rebutted by evidence adduced.

The pertinent facts are as follows. The employer herein provides uniformed guard services for various companies. One such company is Comet Electronics, located at 4800 Deramus, Kansas City, Missouri. Lloyd Parrish was employed as a guard by the employer at Comet. Parrish worked the 4:30 p.m. to 11:00 p.m. shift on Monday through Friday. Parrish also had a second job (unrelated) cleaning two churches.

Comet Electronics supplies and services remote switching devices in local railroad yards. Parrish had only two functions to perform in carrying out the security services for the employer at the Comet building. The first function was to "make a watchman's clock round" every hour. In making this "round", Parrish carried a specially designed clock, walked to six different locations (four locations were inside the Comet building and two were just outside the Comet building), took a key from each location and turned the key in the lock which in turn would cause the clock to register on a rotating tape the time and location.

Parrish and his fellow guards were instructed to make a "round" every hour in the order of location one through six, or just the opposite from location six through a reverse order to location one. Concerning the two "outside locations", Parrish and the others were instructed to step outside, turn the key, and return to the inside of the building. The duties of Parrish and the others did not require them to be outside the building other than the procedure described above for the two outside key locations. Parrish and the others were provided no written instructions of their duties and they were trained on the job by a supervisor for the employer. Some of the

guards, including Parrish, were authorized to carry a firearm. Some of the guards carried the weapons on their person and some did not.

On October 17, 1975, Parrish left his home at approximately 3:30 p.m. for his work tour at Comet. Parrish drove his own automobile to and from work. His work duties did not include the use of his automobile. Between 6:01 and 6:45 p.m. on the evening of October 17, 1975, Parrish's body was found between the front of Parrish's automobile and the front showroom of the Comet building. The showroom area had a plate glass window. The top portion of the body was just inside the building as the plate glass had been broken. The lower portion of the body was on the outside of the building.

The local fire department arrived on the scene first. They were followed by local police, who sealed off the area and conducted an investigation. When the police arrived, the hood of Parrish's vehicle was down and the ignition was off. (A police investigator later testified that there was no tampering with anything at the scene.) Police found a red-handled screwdriver and a flashlight on the ground near Parrish's body. (The surviving widow, Marjorie Parrish later testified that her late husband used a red-handled screwdriver on the janitor's job, which he went to after his duty tour at Comet. The screwdriver was kept either on his person or in the glove compartment of his automobile.) Police investigators also found another screwdriver and a pair of pliers under the automobile hood. Also under the hood they found a shop rag on the left side of the engine. Investigators also observed that the engine air cleaner was not in its regular or normal position and the wing nut which held it in place was missing. They also observed that the transmission was in low gear and the emergency brake was on. Investigators later stated that the engine was still warm and there was an "overheating" smell coming from the automobile. The Comet building contained smoke from the burning transmission bands of the Parrish automobile.

The Parrish automobile was towed to the local police garage and examined. The police mechanic observed that the linkage between the accelerator and the carburetor was sticking. From their investigation, police investigators concluded that there was no evidence of any criminal conduct, and that Parrish was accidentally killed while working on his automobile. Mrs. Parrish later stated that while she did not know if her husband worked on his automobile at the time of his death, he did not normally perform work on his automobile.

A former employee of Kansas City Security, Robert Hemmer, who had also worked at Comet, testified for respondents. Hemmer, in summary, testified to the following pertinent facts. He stated that there was no key location outside of the front door of the Comet building and that the clock-key round would not take a guard to the front door. He further stated that the telephone could not be answered from outside. He also stated that there were no job duties which took a guard outside at the front door and that the guards were not supposed to leave the building.

Other evidence revealed that the nearest clock-key location was some 100 to 150 yards from where the body of Lloyd Parrish was found. Other evidence revealed no outside speaker for the telephone near the front door of the Comet building and that the telephone could not be heard by anyone outside at the front of the building.

At the close of the hearing, the Administrative Law Judge found from all the credible evidence and by application of presumptions allowed by law, that Lloyd Parrish died as a result of an accident arising out of and in the course of his employment. The decision was appealed to the Commission, which affirmed the award with one Commissioner dissenting. The employer then appealed the Commission ruling to the circuit court, which in turn affirmed the award. The appeal to this court then followed.

As noted above, the appellant-employer presents two points, charging that the trial

court erred in affirming the Commission's award. These two points are so interrelated, they are not discussed separately, but rather, this decision, in disposing of this appeal, takes up both issues conjunctively.

It is evident from the "Findings of Fact and Rulings of Law", that the Administrative Law Judge relied upon and applied the "found-dead presumption". No detailed explanation of that presumption is undertaken herein as that has been previously provided in *Russell v. Southwest Grease and Oil Co.*, 509 S.W.2d 776 (Mo.App. 1974). It can be said that *Russell* acknowledges and applies the following rule that there arises a rebuttable presumption if an employee is shown to have died or been injured under unexplained circumstances on the employer's premises and during the hours of employment, that the death or injury resulted from an accident arising out of and in the course of employment.

Immediately, certain other factors must be considered. The first worthy of mention is the caution expressed in *Russell* that the *rebuttable presumption does not extend to a showing of the elements of an accident.* This court, in *Russell*, also went on to declare at 779:

"In the many Missouri cases discussing the presumption, the element of accident either plainly appeared or was readily inferable from the surrounding circumstances, and the only debated issue was whether the injury *'arose out of and in the course of employment'*.

There is sound logic in presuming that an unexplained injury or death which occurs on the premises and during the time of employment has a *causal connection with the employment activities.* Work-relatedness naturally follows as a rebuttable presumption from those facts." (emphasis added)

■ Stated another way, the rebuttable presumption, in absence of contrary evidence, provides the causal connection between duties or activities of employment and the resulting death or injury. The presumption neither prevents proof of the lack of causal connection, nor eliminates as part of the claimant's burden of proof of a causal connection. The presumption, in absence of any proof either as to the cause of death or injury or the causal connection, simply supplies the two critical elements of a claim.

■ As noted from the quote above, *causal connection* must be shown either by evidence or the presumption. The mere fact that an employee is found dead or injured on the employer's premises during the hours of employment does not, standing alone, conclusively prove a claim for benefits. There remains the requirement that the death or injury had occurred "under unexplained circumstances." It is obvious that if the circumstances giving rise to the injury or death are by proper evidence or reasonable inferences therefrom explained, two critical issues are resolved. First, the actual (and hence explained) cause of death or injury is disclosed. Second, it becomes more readily possible to determine if the death or injury "arose out of and in the course of employment." As regards this second issue, the question of causal connection is also resolved.

The foregoing concepts have been succinctly stated in *Jackson v. McDonnell Aircraft Corp.*, 426 S.W.2d 669, 676 (Mo. App.1968) and followed in *Russell, supra.*

"We have grave doubts that the presumption arose in this case, and that it must invariably arise in every case, merely because, without any consideration of the surrounding facts and circumstances, a claimant's evidence shows that during his working hours he was found injured at a place where his duties required him to be. *It must be remembered that the burden of proof remains on the claimant throughout the case to show that he was injured in an accident which arose out of and in the course of his employment and such presumptions are merely, ' * * * procedural (placing the burden upon the party denying their truth to produce evidence) * * *,' Duff v. St. Louis Mining & Milling Co.*, 363 Mo. 944, 255 S.W.2d 792, 793. While the passage pre-

viously quoted from *Mershon v. Missouri Public Service Corp., supra* read literally is subject to the interpretation placed upon it by the Commission, an analysis of the presumption cases reveals that it has never been so applied. In fact, as the Supreme Court pointed out in *Kelley v. Sohio Chemical Co.*, Mo., 392 S.W.2d 255, 257, ' * * * in fact, no Workmen's Compensation case actually decided on such a presumption is cited, nor have we found any.' *We are of the opinion that the presumption may arise but that in determining in the first instance whether it does consideration must be given to all of the relevant evidence which is developed and is binding upon claimant, including such evidence as the character of the work assigned to him, the machinery, tools and appliances employed in the performance of his duties, the manner in which his work is customarily performed, the condition of the prior health of the employee, the nature of his injury, and similar pertinent facts and circumstances.*" (emphasis added)

It is obvious that both the *Russell* case and the *Jackson* case are distinguishable as regards the death (i.e., *Russell*, death from natural heart failure) and injury (i.e., *Jackson*, a self-inflicted knife wound) from the instant case, and it might be argued that neither applies to the instant case. However, both cases take up and consider the presumption and hence do find application herein. In addition, both cases place in perspective the issue whether the death or injury "arose out of and in the course of employment."

*Russell* was discussed in *Kinney v. City of St. Louis*, 654 S.W.2d 342, 343 (Mo.App. 1983), with the court again restating at 343:

"Claimant bears the burden of proving her claim to be within the Worker's Compensation Law's provisions. *Bauer v. Independent Stave Company*, 417 S.W.2d 693, 696 (Mo.App.1967). To sustain that burden, claimant must show decedent sustained a death-causing injury which, in turn, was caused by an accident 'arising out of and in the course of [decedent's] employment.' * * *

Claimant contends for a presumption of a work-related accidental injury and death, which she claims arises whenever a worker sustains an unwitnessed injury at a place his employment duties require him to be. While Missouri Courts have toyed with such presumption, none have permitted recovery by its application. This presumption does not extend to a showing of the element of 'accident.' If recovery could be granted on the presumption, the element of accident must plainly appear or be readily inferrable from the surrounding circumstances."

The court in *Kinney* went on to point out that the ruling in *Wolfgeher v. Wagner Cartage Service, Inc.*, 646 S.W.2d 781 (Mo. banc 1983) *did not* change the requisites as previously set forth in *Russell*.

Referring to an earlier decision, *Wheaton v. Reiser Co.*, 419 S.W.2d 497, 499 (Mo.App.1967), this court discussed the requirement of a claimant to "show that death resulted from an accident arising out of and in the course of employment." This court went on to point out:

"There is no question that the accident, i.e., the fall, occurred 'in the course of' employment. However, the difficulty arises in determining whether or not the accident arose 'out of' the employment. In order to recover, claimant must show a causal connection between the employment and the fall and that the fall caused the hemorrhage which caused deceased's death.

It is not every injury occurring while claimant is at work which is compensable. Only such injuries which arise 'out of' employment are compensable. Before it can be held that an injury (or death resulting therefrom) arose 'out of' the employment a causal connection between the employment and the accident and injury must be found. See *Liebman v. Colonial Baking Company*, Mo.App., 391 S.W.2d 948, where this requirement is set out: 'The familiar rule is that an accident will be held to have arisen "out

of" the employment when, from a consideration of all the relevant circumstances, it appears that there was a direct causal connection between the employment and the injury (attributable either to the nature of the employee's duties or to the conditions under which he was required to perform them) so that the accident can fairly be said to have been a rational consequence of some hazard connected with (or aggravated by) the employment."

In *Wheaton,* after pointing out prior decisions wherein the presumption has been considered, this court further declared at 500:

"To carry her burden of showing such causal connection between deceased's employment and his fall, claimant relies on the presumption that a workman was injured in the course of and in consequence of his employment when he is found injured or dead at a place where the performance of the duties of his employment required him to be. This presumption has been asserted and discussed in such cases as *Duff v. St. Louis Mining and Milling Corp.,* 363 Mo. 944, 255 S.W.2d 792; *Oswald v. Caradine Hat Co.,* Mo.App., 109 S.W.2d 893; *Stamps v. Century Electric Co.,* Mo. App., 225 S.W.2d 493; *McClelland v. Hagerty Wrecking Co.,* Mo.App., 384 S.W.2d 93. In *Mershon v. Missouri Public Service Corporation,* 359 Mo. 257, 221 S.W.2d 165, the holdings of numerous cases concerning this presumption are summarized as follows: 'Without reviewing those cases separately, we make the following general observations: Some, or all of them, hold under our Workmen's Compensation Act and similar Acts that the burden is on a claimant to show that an employee's injury resulted from an accident arising out of and in the course of his employment; but, when an employee charged with the performance of a duty is found injured at a place where his duty required him to be, a presumption arises that he was injured in the course of and in consequence of his

employment; that such presumption is rebuttable.'

In all of these cases, the presumption is discussed, but in each case the court found that there was evidence showing how the accident occurred, and that, therefore, the presumption went out of the case and the decision was based upon the evidence alone."

■ Thus, *Wheaton* illustrates that a death or injury may occur during or "in the course of" employment, but that alone does not satisfy. There remains the difficulty of showing also that the death or injury arose "out of" the employment. First, it must be noted that the terms "in the course of" and "arising out of" are not synonymous, but rather, they "are separate tests for compensability, and both must be satisfied before the employee (i.e., or those claiming under him) is entitled to recover." *Fingers v. Mount Tabor United Church of Christ,* 439 S.W.2d 241, 243 (Mo.App.1969). The court in *Fingers* went on to provide a definition for the two terms. It said at 243, after citing to *Lampkin v. Harzfeld's,* 407 S.W.2d 894, 897 (Mo.1966):

"An injury arises 'out of' the employment when there is a causal connection between the conditions under which the work is to be performed and the resulting injury and it arises 'in the course of' the employment when it occurs within the period of employment at a place where the employee may reasonably be and while he is reasonably fulfilling the duties of his employment or engaged in doing something incidental thereto."

For other cases adopting the foregoing definition, see *Elmer E. Stockman, Jr., Construction Co. v. Industrial Commission,* 463 S.W.2d 610, 612 (Mo.App.1971), *Kunce v. Junge Baking Co.,* 432 S.W.2d 602, 609 (Mo.App.1968), and *Taylor v. Bi-State Development Agency,* 416 S.W.2d 31, 34 (Mo.App.1967).

At this juncture, it becomes necessary to consider the particular facts and circumstances of the instant case and to view them in light of the foregoing principles

and/or definitions. Certain conclusions can first be set forth in summary fashion and without lengthy discussion, leaving the opportunity for greater detailed consideration of two remaining matters. First, it can be concluded that the deceased employee was, at the time of his death, upon the employer's premises during the hours of his employment. It can also be concluded that the employee's death was the result of an accident (i.e., being crushed to death by his own automobile). This latter conclusion stems from physical evidence found at the scene, plus the absence of any evidence which neither suggests nor establishes either a homicide or a suicide. Stated another way, there is absolutely no evidence that the deceased employee committed suicide. In addition, the evidence presented by investigating authorities supported their conclusion that the deceased employee did not die as a result of, nor was he a victim of, a homicide. Thus, the only conclusion that can be reached is that his death resulted from an accident.

With the foregoing conclusions having been stated, the court's attention can be directed toward answering three questions, and with the answers thereof, the final determination of this appeal can be reached. The first question is: Did the accident resulting in the employee's death arise in the course of his employment? The second question is: Did the accident resulting in the death of the employee arise out of his employment? The third question is: Did the "founddead presumption" apply to the instant case?

█ In taking up the first question, the above definition must again be considered. That definition stated that an injury (or death) arises " 'in the course of' the employment when it occurs *within the period of employment, at a place where the employee may reasonably be and while he is reasonably fulfilling the duties of his employment or engaged in doing something incidental thereto."* (emphasis added)

The evidence upon the record before this court is undisputed that the deceased em-

ployee sustained a fatal injury *within the period of employment.*

Continuing then, the evidence regarding *at a place where the employee may reasonably be* must be considered. The record herein clearly defined the deceased employee's duties as a security guard. Each hour he was to turn a clock-key at six defined locations at the Comet Electronics Company building. Four of these clock-key locations were inside the building. Two clock-key locations were outside (but attached) to the building. The remainder of time on the job was to be spent listening for the telephone and in turn reporting emergencies, if any, to designated employees of Comet Industries. The job duties did not include the use of the employee's automobile, nor was there any evidence that the automobile was ever used in furtherance of the employer's business or to the benefit of the employer. In addition, the evidence revealed that the job duties (with the exception of turning the two outside key-clocks) did not include any activity outside of the building. The evidence included testimony of a former employee (and from the record it is apparent that this former employee was, to say the least, unfriendly toward appellant-employer) who stated that there were no duties which called for a guard to be outside at the front door of the building (i.e., the approximate location of the fatal accident) and that the guards were not supposed to leave the building. The evidence revealed that the nearest key-lock location was some 100 to 150 yards from the location of the fatal accident. Additionally, it was established that the telephone could not be heard from the outside. Considering this evidence, it cannot be said that the deceased employee was, at the time of his fatal injuries, at a place where he, as an employee, *may reasonably be* as required within the above definition.

In further consideration of the evidence, with particular reference to the remainder of the "in the course of" definition again, the definition or the remaining portion thereof is set forth. An employee is said to have been injured or the injury is said to

arise "in the course of the employment ... *while he is reasonably fulfilling the duties of his employment or engaged in doing something incidental thereto."* (emphasis added) The record reveals that the deceased employee was found crushed to death as a result of his being crushed between the front of his automobile and the front of the Comet building. A pair of pliers, a screwdriver, and a "shop rag" were found at the location. The automobile engine was still warm, in low gear, but the ignition was turned off. The evidence revealed that the hood was down, but nothing shows that it was latched. The inside of the building was filled with smoke from the burning transmission bands on the automobile. The evidence revealed that the linkage between the accelerator and the carburetor was sticking. Again, it is noted that the duties of the deceased employee did not include the use or operation of his automobile, nor was there evidence that his automobile was in any manner utilized to further the business of the appellant employer. It must be concluded from the evidence presented that the activities leading to the employee's death were not such that he was reasonably fulfilling the duties of his employment or engaged in doing something incidental thereto as required by the above definition.  ·

Thus, it must be further concluded that the employee did not sustain his fatal injuries "in the course of" his employment.

■ Considering further the requirement that there must be proof that the death or injury arose "out of" the employment, a return once again to the above definition, followed by the facts upon this record, must be undertaken. As noted above, an injury [or death] "arises out of" employment when there is a *causal connection* between the conditions under which the work is to be performed and the resulting injury.

Even with the risk of repetition, it must be noted that there is no evidence which reveals that the employer's duties called for the use of his automobile or that the business of the employer was furthered, or that the employer derived a benefit therefrom. It must also again be noted that the employment duties (except for briefly stepping outside to turn a key-clock at two locations) did not provide for the employee to be outside the building. In addition, testimony revealed that the guards were not supposed to leave the building. The evidence revealed that the nearest key-clock was some 100–150 yards from the location of the fatal accident. The only conclusion which can be reached is that the employee, at the time he sustained his fatal injuries, was not performing work in furtherance of his employment duties, nor did the evidence establish any causal connection between the conditions under which the work was to be performed and his resulting injury.

Thus, it must be concluded that the fatal injuries sustained by the employee did not arise "out of" his employment.

■ The final question is: Does the "found-dead presumption" apply to the instant case? The presumption, as noted above, in absence of contrary evidence provides that an employee found injured as a result of unexplained circumstances, is presumed to have been injured in the course of his employment, and his injuries arose "out of" his employment. To repeat the above facts is unnecessary, as it is shown that two critical elements within the presumption, by substantial and competent evidence upon the record, are lacking in this case (i.e., "out of" and in "the course of" the employment). The evidence having established the non-existence of those two elements thus rendered the presumption non-applicable to the instant case. As noted in *Russell*, the presumption cannot be applied to a showing of the elements of an "accident". Further, in accordance with *Russell*, the evidence upon this record provides ready inference that the deceased employee was, at the time of his fatal injuries, working on his private automobile, and his conduct or activities were neither within the course of his employment, nor was there any causal connection between his working conditions under which his work was to be

performed and his resulting injury. The evidence upon this record clearly removed the presumption from this case. As a further matter, it cannot be said that the evidence upon this record, standing alone and without the application of the "found dead presumption" was competent and substantial as to support an award within the meaning of our worker's compensation law. It has previously been shown why the presumption has no application. It must be concluded further that there was not substantial and competent evidence to support the Commission's award.

The judgment is reversed and this cause is remanded with directions to the circuit court to in turn order the Missouri Labor and Industrial Commission to set aside its award and enter, in lieu thereof, its order denying compensation benefits herein.

All concur.