Frederick K. SITZES, deceased,
Employee/Respondent,

v.

SITZES REPAIR SERVICE & TOWING,
Employer/Appellant,

and

Millers' Mutual Insurance Association
of Illinois, Insurer/Appellant.

No. 65340.

Missouri Court of Appeals,
Eastern District,
Division Four.

Nov. 22, 1994.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Jan. 3, 1995.

Case Transferred to Supreme Court
Feb. 21, 1995.

Case Retransferred to Court of Appeals
May 30, 1995.

Original Opinion Reinstated
June 8, 1995.

Paul D. Huck, Dean R. Gallego, Brinker, Doyen & Kovacs, P.C., Clayton, for appellant.

E. Thomas Liese, John P. Kafoury, Holtkamp, Liese, Beckemeier & Childress, P.C.,

James F. McCartney, Gabriel & McCartney, Michael J. McAvoy, McAvoy, Bahn & Tolin, St. Louis, for respondent.

KAROHL, Judge.

This is a worker's compensation case. Employer, Sitzes Repair Service and Towing, and insurer, Millers' Mutual Insurance Association of Illinois, appeal from an award of the Labor and Industrial Relations Commission granting widow and five children an award for the death of employee, Frederick Sitzes (Sitzes). We affirm.

Sitzes operated Sitzes Repair Service and Towing as a sole proprietor. On December 23, 1991, he gave a Christmas party for all employees on the business premises. He furnished alcoholic beverages and food. During the early evening Sitzes' brother and former employee, Ricky Sitzes, appeared at the party. He was not invited. Decedent and Ricky had several arguments that evening concerning Ricky's previous employment at the business. Sitzes also argued with his wife sometime during the party. Other guests engaged in arguments with each other. The administrative law judge (ALJ) found that moods changed from merry to ugly. Around midnight, Sitzes died from a gunshot wound in the head. The ALJ found there was insufficient evidence to support the defense that decedent died as a result of an intentional self-inflicted injury.

Cynthia Crawford, one of the last persons to leave the party, testified Sitzes had fired a gunshot earlier that evening. He had pointed a gun upward, and ordered everyone to leave. Crawford immediately began to leave, but returned when she discovered she did not have her purse. When she returned, Crawford thought she saw Sitzes pointing a gun at Ricky's head. She heard the shot that killed Sitzes, but she did not witness the shooting. Crawford admitted she was intoxicated and that her intoxication might have affected her recollection or memory of what had occurred at the party.

Ricky Sitzes testified for the employer. He admitted he wasn't invited to the Christmas party. He hadn't seen his brother for a little more than one month before the day of the party. His employment history with his brother was turbulent. He had worked for his brother on five or six different occasions. When Ricky's employment was terminated several weeks before the Christmas party,

Sitzes asked Ricky to sign a document which indicated he had resigned. Thereafter, Ricky filed for unemployment compensation. Ricky testified he discussed his application for unemployment benefits with Sitzes who agreed he wouldn't contest the claim. After the shooting he told police he had several arguments with his brother during the party concerning the termination of his employment.

Ricky testified people started leaving the party about 11:30 p.m., but he remained. He stated he did not see Sitzes walk out of the office with the gun, but he did see him place the gun to his own temple, "click the hammer back" and pull the trigger. No one else witnessed the shooting. He admitted he "had to be pretty buzzed myself" at the time the shooting occurred because he had consumed 15 to 20 cups of beer.

The Certificate of Death indicates Sitzes died of a gunshot wound to the head. Acute ethanol intoxication was described as a significant condition contributing to death. Sitzes' blood alcohol content was .296 gm. percent. A report from Dr. Michael Graham, St. Louis City Medical Examiner, concluded the "manner of death" was undetermined.

Employer offered the deposition of Dr. Graham. Dr. Graham testified Sitzes died of a gunshot wound to the head, and he opined that the manner of death could not be determined on the basis of the current information he had at the time he arrived at his conclusion. The gun was in contact with the scalp when it discharged. The bullet went from the right to the left at an angle upward and to the rear. Dr. Graham could not determine whether the wound was self-inflicted or inflicted by another.

Employer also offered the deposition of Dr. Carl Rothove, a forensic chemist, who is employed by the Missouri State Highway Patrol. Dr. Rothove examined the contents of a gunshot residue kit, which was provided by the Valley Park Police Department. Dr. Rothove examined the results of swabs which were taken from both sides of Ricky Sitzes' hands. He found sufficient levels of barium and antimony on the back of Ricky's right

hand to conclude there was gunshot residue on the back of the right hand. On the basis of the test results, Dr. Rothove could not conclude whether Ricky Sitzes had or had not fired a gun; he could only conclude there was gunshot residue on the back of Ricky's right hand.

The ALJ found that employee's death arose out of and in the course of his employment. It occurred at a company party on company premises. The ALJ also found claimants, the widow and children, are entitled to death benefits under § 287.240 RSMo Cum.Supp.1990. The ALJ determined that the weekly death benefit of $333.33 should be divided equally among the widow and decedent's five children. The Commission adopted the findings of the ALJ, one commissioner dissenting, and affirmed the award.

The rate of compensation was in dispute. Employer contends claimants failed to prove an average weekly wage of $500 per week. Decedent's widow testified that a check in the amount of $325 was drawn on the account of employer on a weekly basis. She also testified her husband withdrew $100 in cash on a weekly basis and gave it to her to use for the family's personal needs. Sitzes also pocketed $100–$200 per week from the business for his personal needs. During the period from December 24, 1990 through December 23, 1991, $500 to $600 was withdrawn on a weekly basis for the family's personal use. This evidence supported the amount of the award.

■ Employer presents five points on appeal contesting sufficiency of proof to support an award. Each of these proceeds on the premise that Sitzes died by intentional self-inflicted gunshot wound. However, suicide was a disputed issue and there is a rebuttable presumption against suicide. *Mershon v. Missouri Public Service Corporation*, 359 Mo. 257, 221 S.W.2d 165 (1949); *Kolde v. St. Louis County*, 809 S.W.2d 14 (Mo.App.1991).

■ Appellate review is limited to a determination of whether the Commission's decision is supported by competent and substantial evidence, upon review of the entire rec-

ord and consideration of the evidence in a light most favorable to the award. *Scheper v. Hair Repair, Ltd.*, 825 S.W.2d 1, 3 (Mo. App.1991).

■ There was competent and substantial evidence to support a finding suicide was not proven as the manner of death. The presumption may be insufficient by itself to carry claimant's burden of proving a compensable accident. *Jackson v. McDonnell Aircraft Corporation*, 426 S.W.2d 669, 676 (Mo.App. 1968). Either the Commission did not believe the testimony of Ricky Sitzes that the wound was intentionally self-inflicted or it believed the shooting was not intended. Credibility of witnesses is a matter for the Commission. *Kowalski v. M–G Metals and Sales, Inc.*, 631 S.W.2d 919, 921 (Mo.App. 1982). It may have found Ricky Sitzes' testimony was unreliable or untruthful regarding the manner of shooting. It found:

> although Ricky Sitzes testified that the decedent placed the gun at his own temple and shot himself, he also exculpated himself by testifying that his presence had nothing to do with the shooting.

It found Ricky did not credibly explain why he had gunshot residue on the back of his hand. This evidence and the proof of strained relations with Sitzes would support a finding of third-party responsibility which is a workers' compensation accident. Section 287.120.1 Cum.Supp.1990.

■ The Commission found "there is insufficient evidence to support the employer's claim that the decedent died as a result of an intentional self-inflicted injury." The burden of proof of intentional self-inflicted injury was on employer. Section 287.120.3 RSMo Cum.Supp.1990. *Kolde by Kolde v. St. Louis County*, 809 S.W.2d 14, 15 (Mo.App.1991). By implication, it rejected suicide as the manner of death. However, it did not expressly find homicide or unintentional self-inflicted shooting.

■ The question is whether the award may stand where the Commission found that "because of the manner in which the shooting occurred, it is impossible to ascertain the exact cause or causes of the shooting." We find the evidence was sufficient. The cause

of death is known. Sitzes died from a gunshot wound to the head. What is unknown is how the shooting occurred. The ALJ and the Commission rejected a finding of suicide. If an employer proves an employee committed suicide, a claimant cannot recover a workers' compensation award. Section 287.120.3 Cum.Supp.1990. Once suicide is eliminated as the manner in which the shooting occurred, there are only two other possible explanations of Sitzes' death: (1) homicide; or (2) unintentional self-inflicted wound. Homicide was an option supported by the presumption against suicide and the physical evidence together with proofs of motive and opportunity for a third-party shooting. Death of an employee "caused by the unprovoked violence or assault against the employee by any person" is a compensable accident under workers' compensation. Section 287.120.1 Cum.Supp.1990. The presumption against suicide and evidence which would support finding an unintentional self-inflicted wound also exist. Section 287.120.3 RSMo Cum.Supp.1990 only bars recovery for intentional self-inflicted injury. It does not bar awards for unintentional or accidental injuries. In 1990, the legislature added subsections 6–10 to § 287.120. Subsections 6.(1) and (2) authorize a reduction of an award by 15% or bar an award for injuries which result from use of alcohol or drugs in violation of employer rules. Here, Sitzes, as employer, furnished the alcohol. His use of alcohol was not shown to violate any rule. There was no proof of violation of employer rules to bar or limit the recovery even where the unintentional injury may have occurred "in conjunction with the use of alcohol." Section 287.120.6(1) RSMo Cum.Supp.1990. Thus, by eliminating suicide as the manner of death, the ALJ and Commission could find only that the manner of death was either homicide or unintentional self-inflicted wound. Either finding will support the award. The premise for the claims of error, the fatal wound was intentionally self-inflicted, fails.

Employer's specific complaints of error which assume death was caused by intentional acts or did not arise out of or in course of work are these: 1) Sitzes, by engaging in alcohol abuse and misuse of a firearm, abandoned any employment purpose the party may have been intended to have; 2) claimants had the burden to prove intoxication as a contributing cause of the shooting was "rationally related" to the employment; 3) the conclusion and finding that intoxication prevented Sitzes from forming an intent to commit suicide are unsupported; 4) a compensable accident was not proven because of the evidence the degree of intoxication distorted or denied Sitzes' cognitive ability to appreciate the consequences of his action; and, 5) the forfeiture provisions of § 287.120.6(2) RSMo Cum.Supp.1990 apply to the claim.

These claims of error fail to support a reversal of the award where the Commission could only find either homicide or unintentional self-inflicted wound. The tragedy occurred at a company party where drinking was a part of the entertainment. Sitzes was very intoxicated. The evidence supported the conclusion of law that the acts which caused death did arise out of or in the course of employment. Whether the death was caused by either homicide or unintentional self-inflicted gunshot wound the award was supported by the evidence and either is a compensable accident.

We affirm.

AHRENS, P.J., and SIMON, J., concur.